## Commonwealth v. Mellor.

*Charles F. Kelley*, Assistant District Attorney, for Commonwealth.
*Thomas J. Minnick* and *J. Jerome Katz*, for defendant.

McDEVITT, P. J., MacNEILLE and GORDON, JR., JJ., July 23, 1928.—On March 23, 1928, at about 10 o'clock in the evening, Max T. Harrison, the manager of the Cross Keys Theatre, located at the corner of Salford and Market Streets, in the City of Philadelphia, was held up as he was leaving the theatre with the day's receipts by the defendant and a companion named Barclay, who attempted to rob him. Mr. Harrison was accompanied by John A. Clark, a police officer, who had been assigned regularly to guard him. When Mr. Harrison and Clark ignored the defendant's order to "stick 'em up," the defendant discharged his revolver at Mr. Harrison, who fell to the ground mortally wounded. At about the same time, Barclay fired his revolver from an automobile used in the holdup. Officer Clark then fired two shots at the robbers, one of his bullets unfortunately hitting a young lady who was standing nearby and who died on the day of the trial of the wound so inflicted, and the other apparently hitting the car in which the defendant and Barclay were making their escape from the scene of the crime. The defendant was later arrested and indicted for the murder of Mr. Harrison in the attempt to perpetrate this robbery. The jury found him guilty of murder of the first degree and fixed the penalty at death, and he now moves for a new trial, assigning nineteen reasons therefor. For convenience of discussion, the reasons assigned may be considered under four general groups:

1. Those having to do with the examination of the jurors on their *voir dire*.
2. Those relating to rulings on evidence and the general conduct of the trial.
3. The refusal by the trial judge of a request for charge.
4. The admission of the confession of the defendant in its entirety, objection having been made by him to certain parts of it.

The first of these groups embraces reasons 5, 6, 7 and 8. The fifth relates to the action of the court in ruling out a question asked of a juror which called for an explanation of apparently conflicting answers. The form of the question was objectionable, and the juror's confusion was afterwards cleared up by a proper question which disclosed no cause for challenge. The defense then challenged the juror peremptorily. This ended the ruling as a possible harmful factor of the trial. The defense was not compelled to take an unacceptable or disqualified juror; and it is well settled that a defendant is not entitled to a particular juror or set of jurors, but only to twelve disinterested and fair-minded triers of his case: Com. v. Payne, 205 Pa. 101. It is also well settled that when, as here, the defense does not exhaust its peremptory challenges, it is harmless error even to overrule a challenge for cause which should have been sustained if the juror is actually excluded by a peremptory challenge. This is one of the purposes for which the right of peremptory challenge is given.

The sixth reason relates to the sustaining of the Commonwealth's objection to the following question, asked of a prospective juror, as to the substance of which the court ruled that the defense was not entitled to inquire: "If you were accepted as a juror in this case, and assuming that you had, after a conscientious deliberation and consideration of all the evidence, arrived at a conclusion as to the guilt or innocence of the defendant, and if, after you had arrived at that conclusion or determination, you then realized that the majority of your fellow-jurors did not coincide and agree with your verdict, would you, from the mere fact that the majority of the jurors disagreed with you, change your conclusion to the conclusion of the majority of the jurors before you were convinced beyond a reasonable doubt that the conclusion or determination that you had arrived at was the incorrect one and that the new position or determination of the majority of the jurors was the correct one?"

The twofold vice of this question is apparent. In the first place, it is an effort to find out, in advance, how the juror will act in a particular contingency and subtly to pledge him to a particular course of action; and, in the second place, it overlooks the right of a juror to yield and reform his judgment in deference to the opinion of the majority of his fellows. All that a defendant is entitled to learn on a *voir dire* examination is whether the juror will go into the box with an open and unbiased mind, free from fixed and preconceived judgments about the case. Beyond this he cannot inquire. When it becomes evident that the juror is not handicapped by bias or prejudice, the defendant must take his chance on the manner in which the juror will exercise his reasoning faculties and judgment. The purpose of the *voir dire* examination in our system of trial by jury is to get twelve average citizens who can exercise upon a problem before them their best judgment, untrammeled either by preconceptions of the facts and law or by anticipatory pledges designed to control their deliberations. In addition, as already indicated, a juror would have the right to yield his judgment to that of a majority of his fellows. This is the essence of group deliberation, and a pledge in advance to do otherwise would destroy the juror's freedom of action.

It may be noted here that the third of the groups of reasons for a new trial contains but one reason—the sixteenth—which raises, in the form of a point for charge, the question that has just been discussed. The point is a direction to the jury substantially to the same effect as the question asked of the juror, and, for the reasons indicated, was properly refused by the court.

The seventh reason for a new trial involves the action of the court in stopping further examination of a prospective juror who had declared that

he would not, under any circumstances, render a verdict carrying the death penalty. The determination of the qualification of a juror rests in the discretion of the court. The questions are asked to enable it to exercise that discretion, and it may stop profitless examination as soon as it is satisfied upon the subject. The juror had clearly and explicitly disclosed his scruples against capital punishment, and further examination would have been an unnecessary waste of time.

The eighth reason relates to the remarks made by the court to the panel during the drawing of the jury. As the examination of the panel progressed, the proportion of jurors who declared that they had conscientious objections to capital punishment grew until almost every juror claimed to have such objections, and it became evident that many were making false answers in that regard in order to avoid performing their duty. This prompted the remarks of the court, which we have examined with care and find to be free of error and fully justified by the situation confronting the trial judge.

The second group of reasons for a new trial embrace reasons Nos. 9 to 15, inclusive, and 17 and 18. Of these, the ninth, tenth, eleventh and twelfth relate to rulings made during the examination of Officer Clark, who, it will be remembered, had been assigned to guard the deceased and who resisted the attempted robbery. The ninth reason assigns as error the action of the court in stopping, in the following language, the repeated putting, by counsel for the defendant, of the same question to the witness. The question put was: "I am not asking you whether he was or not, but whether you didn't say that to the district attorney?" At this point, the court interposed and said: "Don't pursue that line any further. The jury heard whatever he said, and we all heard it, and you don't have to ask him whether he said this or that. Ask him any question of fact, but don't debate it with him." The witness had already answered the question three times, denying that he had so said, and the record shows his denial to be correct. The court, therefore, did not err in stopping further repetition of the question. The habit of unduly pressing a witness in this manner in an effort to get him to change his testimony or to trick him into a seeming contradiction is not good practice and should not be permitted.

The tenth reason alleges error in the court's refusal to hear argument by counsel on an objection. An attorney has no legal right to argue an objection unless the court desires it. He is fully protected against error by his exception, and if the court is satisfied to rule without argument, counsel cannot demand that he be heard. Many objections are made in the course of a trial upon which it would be a needless waste of time to hear argument, and it is unseemly and destructive of the order and decorum of a trial for counsel to insist upon arguing a question after the ruling has been made.

The ruling of the trial judge, which is the subject of the eleventh reason for a new trial, was clearly correct and does not require discussion.

The twelfth reason for a new trial involves the same question that was discussed under the ninth reason, and it is sufficient, therefore, to note that, in our opinion, the ruling of the court was free from error.

The thirteenth, fourteenth and eighteenth reasons may be considered together. They involve a complaint of alleged unfair and prejudicial conduct by the trial judge. A careful examination of the record shows that the complaint is unfounded. The parts of the record covered by these assignments speak for themselves. There is nothing in them to justify the general and severe stricture on the trial judge's conduct of the case or to support the contention that anything said prejudiced the defendant's cause. Indeed, the

court was careful to protect the defendant's interests by withdrawing the jury from the room while it administered the "rebuke" of which counsel complains and which his repeated disregard of the court's rulings and admonitions fully justified.

The seventeenth reason is without merit. It is merely a repetition of other reasons in this group and has been fully covered by the foregoing discussion.

The nineteenth assignment constitutes the fourth and last of the groups of reasons for a new trial. The defendant contends that it was error for the trial judge to admit in evidence his entire confession and to refuse to strike out those parts of it to which he objected. The parts objected to were those in which the defendant told, in some detail, of a number of other crimes committed by himself and Barclay during the space of a few months before the murder. Ordinarily, it would be error to admit evidence of other crimes committed by a defendant, as they would have no probative value in establishing the crime on trial. That is well settled. It is also well settled, however, that such evidence is admissible when the other crimes are so connected with the one on trial as to have evidential value in explaining intent and motive; proving a general and common design; guilty knowledge and purpose; to obviate mistake, or to show that the participants in the crime on trial were "banded together to commit crimes of the kind charged:" Com. v. Elias and Johns, 76 Pa. Superior Ct. 576; Hester v. Com., 85 Pa. 139; Com. v. Griffin, 42 Pa. Superior Ct. 597; Com. v. Shields, 50 Pa. Superior Ct. 1; Com. v. Dumber, 69 Pa. Superior Ct. 196; Com. v. Rabinowitz, 73 Pa. Superior Ct. 221; Com. v. Coles, 265 Pa. 362; Com. v. Weiss, 284 Pa. 105; Com. v. Dwyer, 79 Pa. Superior Ct. 485; Wharton on Criminal Evidence, § 53.

From these and the many other cases dealing with the subject, the fundamental principle is to be gathered that evidence, which is otherwise admissible, is not rendered inadmissible merely because it involves the commission of another crime than the one on trial. Applying this rule to the confession before us, it is clear that those parts of it to which objection was made were properly admitted. They tell how, about three months before the murder, the defendant and Barclay started a course of joint and systematic stealing and robbery; how, on the first night of their criminal enterprises, they stole an automobile and held up and robbed a citizen in southwest Philadelphia; how, from then on, during the short space of a dozen weeks, they, together with others who had joined their band, committed theft after theft and robbery after robbery; stole at different times the car and the automatic guns which were used in the attack on Mr. Harrison; and, finally, how their organized criminal course culminated in the murder of Mr. Harrison in that attempted robbery. When the confession was offered, the Commonwealth had shown no more than the assault and the order of the defendant, at the beginning of it, to "stick 'em up." It was only an attempt at robbery, however; and while the jury might have inferred from the circumstances the intention to rob, upon which the charge of first degree murder was based, the Commonwealth was entitled to use all the relevant evidence in its possession to make certain and to clarify the criminal purpose of the assault and the significance of the possible ambiguous command to "stick 'em up." It, therefore, seems to us that the admissibility of the confession in its entirety, at the time it was offered, is undoubted. But, even if it were error to admit the parts of the confession objected to, it was cured by the defendant's subsequent admission, on the stand, that the killing occurred in the perpetration of a robbery. This rendered harmless any possible technical error, for the defendant's own testimony fixed the crime at murder of the first degree. In these

circumstances, the evidence took on a further value in assisting the jury to fix the proper penalty for the crime. It showed that it was not an isolated offense, committed suddenly and without full realization of its true nature. It was disclosed by this evidence in its real light, as a deliberate and studied deed, the outcome of a well-settled and long-continued course of misconduct of the same kind. The Act of May 14, 1925, P. L. 759, vests in the jury the judicial function of fixing the penalty to be imposed for murder of the first degree. In performing that duty, the considerations indicated were proper and important for the jury to bear in mind, and to have deprived them of such evidence would have interfered with their administration of exact justice in the case. Of course, such evidence would not be admitted if it were prejudicial to the determination of guilt or innocence; but, being harmless to that issue, it was illuminating of the other, and it was not error to let the jury consider it in determining what penalty the prisoner's offense deserved.

The remaining reasons for a new trial are formal—that the verdict was against the law, the evidence and the weight of the evidence, and are without merit. The defendant admitted that, when the killing occurred, he was engaged, with his confederate Barclay, in robbing the deceased. There was no dispute about that fact, and his only defense consisted in an effort, by confusion of evidence, to make it appear doubtful whether the deceased was killed by himself or Barclay, on the one hand, or, on the other, by Officer Clark, who returned his fire. His efforts in that direction failed, for it was clearly and overwhelmingly established that it was the defendant who fired the fatal shot. This made his crime murder of the first degree under the act, and any other verdict would have been contrary to law and a miscarriage of justice. So far as the penalty is concerned, that is a matter resting exclusively in the sound discretion of the jury, whose decision is fully justified by the enormity of the crime.

The motion for a new trial is, therefore, overruled.