# Commonwealth v. Dumber, Appellant.

*Criminal law—Arson—Declarations of prisoner—Evidence.*

On the trial of an indictment for arson where the Commonwealth has introduced evidence tending to show that the fire was of incendiary origin, it is not error to admit proof of statements made by the prisoner immediately after the fire without solicitation or promise, explaining how the fire occurred, and intended to exculpate himself, but proven by other testimony to be false.

*Criminal law—Arson—Evidence as to other crime—Motive.*

It is a general rule that a distinct crime unconnected with that made in the indictment, cannot be given in evidence against a prisoner; but where the other crime testified to furnishes a motive for the crime for which the prisoner is indicted, such evidence is competent.

On the trial of an indictment for arson, where the fire is shown to have been of incendiary origin, it is competent to introduce proof of a series of acts committed by the prisoner with the intention of defrauding his creditors, and that the burning of his store was necessary as the final act to destroy all incriminating evidence of the fraud which he had committed. In such a case it is not necessary to show that any specific person had been defrauded, if it appears from bankruptcy proceedings that his creditors, as a class, were defrauded.

Argued Oct. 1, 1917. Appeal, No. 137, April T., 1917, by defendant, from judgment of Q. S. Armstrong Co., June Sessions, 1916, No. 1, on verdict of guilty in case of Commonwealth v. Abe Dumber. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Indictment for arson. Before CRISWELL, P. J.

From the record it appeared that the prisoner was indicted for burning a store building in Oakland. The Commonwealth offered evidence which tended to show that the burning of the store was the last of a series of acts committed by the defendant for the purpose of de-

frauding his creditors.   The evidence relating to these
acts is summarized in the opinion of the Superior Court.

Verdict of guilty upon which the prisoner was sen-
tenced to pay a fine of $1,000 and to undergo imprison-
ment for not less than seven years, nor exceeding eight
years in the penitentiary.   Defendant appealed.

*Errors assigned,* among others, were (1-11) in admit-
ting evidence as to statements made by the defendant im-
mediately after the fire, and evidence as to acts commit-
ted by the defendant for the purpose of defrauding credi-
tors, and (15) in refusing binding instructions for de-
fendant.

*E. O. Golden,* with him *W. L. Peart,* for appellant.—
The shipping of goods from Kittanning to Seminole—
from Kittanning to Pittsburgh and from Pittsburgh to
Philadelphia were all separate, distinct and collateral
transactions and evidence concerning them incompetent:
Shaffner v. Commonwealth, 72 Pa. 60; Kramer v. Com.,
87 Pa. 299; Com. v. Andrews, 234 Pa. 597.

The Commonwealth did not prove that the fire was in-
cendiary: Commonwealth v. Byers, 45 Pa. Superior Ct.
37.

Under the rulings all the evidence offered in the case
at bar concerning the bankruptcy of defendant and the
shipping and buying of goods was incompetent for any
purpose whatever: Swan v. Commonwealth, 104 Pa. 218.

*Clarence O. Morris,* for appellee.

OPINION BY KEPHART, J., March 2, 1918:

It will be necessary, for an intelligent understanding
of the legal questions involved, to briefly recite the facts
upon which the Commonwealth seeks to sustain the judg-
ment of the court below.   The defendant for some time
was a shoe merchant in Kittanning, Armstrong County.
In January, 1916, he opened a branch store in Oakland,
a small mining town about twenty miles from Kittan-

ning; leasing a store room which closely adjoined a dwelling house. From December 1, 1915, to March 6, 1916, Dumber purchased shoes to the value of $11,000 which were delivered to his Kittanning store. He then secretly sold these shoes to a Philadelphia firm and adopted this plan of shipment: A part of the shoes were shipped to Seminole, a junction point for Oakland and Pittsburgh, and from Seminole were reshipped to the defendant under an assumed name to Pittsburgh, and from Pittsburgh they were sent to the firm in Philadelphia. Other lots were shipped direct from Kittanning to Pittsburgh, the defendant using the names of prominent citizens of Kittanning as consignors without their knowledge or consent. The shipments were likewise reshipped to the same firm in Philadelphia. He received for the goods $5,600 from the Philadelphia firm. The checks were not deposited in any of his customary places of deposit. It did not appear what became of the money. During this same time, Dumber made other shipments from Kittanning to the branch store in Oakland. One of the boxes was accidentally opened and the railroad agent discovered that it contained empty boxes, rubbish and bricks. The railroad officers then proceeded to investigate and follow all of Dumber's acts. They opened the other shipments for Oakland, and found their contents similar to the one accidentally opened. These boxes were later taken by the defendant to the leased store room and the empty shoe boxes placed on the shelves or in show windows. The room had the appearance of a well-stocked store. It does not appear that he ever did any business there. At 8:30 of the evening of March 6th, the building and contents, with the dwelling next to it, were destroyed by fire. Some days before the fire, Dumber brought to the store, in a telescope case, a quantity of gasoline. He endeavored to secure from the hotel where he stopped, and at other places, candles; assigning to each request a reason for their use different from that used when the other requests were made. He

inquired about the trains leaving town the night of the fire. During the day he appeared very nervous and when he left the hotel for the store he placed some matches in his pocket. He was seen later leaving the store followed by a great volume of fire which consumed the buildings in a short time. When he left the store, knowing it to be in flames, he gave no alarm, but quietly went to a neighbor's house. While the building was burning, he was arrested. He stated to the officer who made the arrest that the fire occurred because a gas hose, by excessive pressure, was blown off its attachment and the escaping gas ignited, causing the naphtha in some rubber shoes to explode and "set things on fire," leaving it to be inferred that the great volume of flame coming so quickly was due to the explosion. He claimed the value of the goods destroyed by fire was seven to eight thousand dollars. An examination of the ruins of the fire did not disclose a single trace of any goods being in the store prior to the fire. No eyelets, shoe lace ends or any metal ordinarily used in the manufacture of shoes or rubbers could be found. It was shown by the testimony of an expert that completed rubber shoes do not contain naphtha, hence there could be no explosion from that cause. Dumber was forced into bankruptcy, his debts largely exceeding his assets.

The defendant urges that the Commonwealth has not shown that the fire was of incendiary origin and that testimony showing an independent crime to have been committed, should not have been submitted to the jury in aid of the conviction of the crime charged in the indictment.

The defendant was the last person about the building when the entire room occupied by him was in flames. His statement thereafter voluntarily made was admissible. It was his account of the fire. The Commonwealth proved it to be false. When the defendant, without solicitation or promise, chose to explain how the fire occurred, he subjected his remarks to a very close exami-

nation.  The statement was intended to exculpate him.
It did show that he knew how the fire occurred, and the
Commonwealth's evidence seemed to demonstrate that
he spoke falsely.  The facts, as we have related them,
and the inference fairly deducible from the defendant's
story, with all the other testimony, were matters for the
consideration of the jury from which it could find the
fire to be of incendiary origin :  Commonwealth v. Bone,
64 Pa. Superior Ct. 44;  Commonwealth v. Hubbard, 65
Pa. Superior Ct. 213.

It is the theory of the prosecution that the fire was in-
tended to conceal the fraud perpetrated on the defend-
ant's creditors;  it was one of the possible plans that
might be selected by a person bent on defrauding his
creditors in the manner devised by the defendant.

"It is a general rule that a distinct crime, unconnected
with that laid in the indictment, cannot be given in evi-
dence against a prisoner.  It is not proper to raise a
presumption of guilt, on the ground, that having com-
mitted one crime, the depravity it exhibits makes it
likely he would commit another":  Shaffner v. Common-
wealth, 72 Pa. 60-65.  The objection to this sort of evi-
dence is that it compels the defendant to meet a charge
of which he had no notice.  It confuses him in his de-
fense, raises collateral issues, diverts the attention of
the jury from the crime immediately being tried, and
generally shows that the defendant should be convicted
because he is a bad man.  We do not intend to modify
this principle.  There are certain exceptions to it.
Where the other crime testified to furnishes a motive,
such evidence is competent.  While the motive with
which an act was done is immaterial in deciding the
question of criminality, motive may be shown as evi-
dence of intent.  It is that which leads to the act.  It
need not be proven, but when evidence tending to show
motive is offered it must follow as a logical inference
that it had a strong tendency to induce the commission
of the act charged;  there should be some common rela-

tion between the two offenses.  Thus in Kramer v. Commonwealth, 87 Pa. 299, the defendant was charged with an attempt to burn a hotel.  Evidence was offered and received to show that two days after the first attempt, which had proved abortive, the defendant was apprehended with combustible materials in his possession which strongly indicated a second attempt to burn the hotel.  The evidence was proper as showing a renewed effort to burn the building.  In People v. Murphy, 135 N. Y. 450 (32 N. E. 138), the charge was that the defendant had burned a barn belonging to a man by whom he had been employed as a gardener.  The defendant had been discharged from this position.  A poisonous preparation had been kept in the barn for use in destroying insects in the garden.  The defendant knew of this.  Evidence was received to show that on the night of the fire, and before it occurred, a span of horses, a pony, and a cow had been poisoned and died.  This evidence was held competent as tending to prove that the injury to the animals was done by the man who set fire to the building, and as part of the same criminal scheme which resulted in the destruction of the barn.

While the evidence in this case undoubtedly tends to establish another offense, it was offered for the purpose of showing a motive or reason for the crime charged in the indictment.  We are concerned only with the purpose for which this evidence was introduced.  To get the shoes from Kittanning to Philadelphia without his creditors or others knowing what had become of them, it was necessary to use a subterfuge and the subterfuge used to screen or cover the shipment of real goods to Philadelphia was the bogus shipments to Oakland.  The defendant's name not appearing in the Philadelphia shipments, ordinarily no trace of this movement would be discovered.  Had the Oakland store remained undisturbed by fire, an examination of the contents of the building by creditors would have shown that no goods were shipped to this store.  This, of course, would have

necessitated further investigation as to what had actually become of the goods and would have revealed the fraud, the defendant well knowing that to complete the plan or scheme devised it was necessary to destroy all incriminating evidence in the Oakland store. His plan might have well succeeded but for a broken box and an alert station agent. It needs no discussion to show the close relationship, or causal connection, between these acts, the one bearing upon the other so as to make this evidence relevant to establish motive. It fills all of the requirements of the rule.

The evidence as to the acts done before the fire, showing a continuous chain of events, was competent. This defendant was under surveillance from the time the railroad officers discovered the bogus shipment of shoes. When it was shown that the fire was of incendiary origin, all the offers of evidence were competent to show the motive for the fire was to conceal the fraud practiced upon the creditors by the sale of shoes in Philadelphia. We need not discuss the assignments in detail. The defendant contends there was no evidence to show that a specific person had been defrauded. He had been declared a bankrupt. That proceeding, with all its information coupled with the testimony of the receiver, showed the defendant's liabilities to far exceed his assets, so his creditors must suffer a loss. The surreptitious manner in which the transaction was carried out, with the receipt of the money placed in some unknown depository, completed the fraud. Unquestionably his creditors as a class were defrauded. They were all his creditors. It was not necessary to show that some individual person did lose money. The bankruptcy records were sufficient. The charge of the court was a careful review of the law. It was not necessary for the judge to comment on the evidence; it was important that the propositions of law be plainly stated to the jury. The court directed their attention to the purpose for which the evidence was offered showing the fraud practiced.

196, (1918).]          Opinion of the Court.

The jury did not misunderstand its duty. There was sufficient evidence, in quantity and quality, from which the jury could find that the fire was of incendiary origin and that the defendant was responsible for it and that his purpose was to conceal a gross fraud that he had practiced upon his creditors.

The judgment is affirmed and the record remitted to the court below to the end that the sentence may be carried into effect.