Commonwealth *v.* Blose, Appellant.

Argued November 21, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Paul S. Lehman,* for appellant.

*Harold W. Houck,* District Attorney, for appellee.

OPINION BY RENO, J., January 17, 1947:

Two indictments were found against appellant; at No. 1 October Sessions, 1945, he was charged with larceny and receiving; and at No. 2 October Sessions, 1945, with burglary. They were tried together, and in separate verdicts he was convicted of all charges. He was sentenced only upon the burglary indictment, and by one appeal he seeks a review of both cases.

At the outset we are obliged to note that his appeal is defective. Where two indictments are tried together, separate verdicts rendered, and sentences imposed, a separate appeal from each judgment must be taken. *Com. v. Schollenberger,* 17 Pa. Superior Ct. 218; *Com. v. Falls,* 102 Pa. Superior Ct. 392, 156 A. 894. Furthermore, no appeal lies unless and until a sentence has been imposed. *Com. v. Jung,* 86 Pa. Superior Ct. 569; *Com. v. Torr,* 111 Pa. Superior Ct. 178, 169 A. 238. Consequently, this appeal can apply only to the burglary charge. So far as it was intended to relate to No. 1 October Term, 1945, it will be quashed.

Since the case must be tried again we shall state only a bare outline of the evidence. On February 26, 1945, the American Legion Country Club, located twenty-three miles from Lewistown, Mifflin County, was broken into and ransacked. Among the missing items were five slot machines, a music box and stand, $516 in cash, and

83 bottles of liquor. On March 12, 1945, appellant was arrested at his home at Maryland, and upon his premises were found five slot machines and a music box, and in his automobile four whiskey bottles, two filled, one partially filled, and one empty. Appellant was a former resident of Mifflin County, and had visited Lewistown on the week-end of the burglary. Appellant relied upon an alibi, claiming that during the whole of the night of the burglary he attended a party at the home of his sister-in-law in Klondike, twenty-five miles from the country club. His further defense was that his physical infirmities were such that it was impossible for him to carry and load heavy articles such as slot machines; and, also, that his automobile was too small to transport the stolen articles with his family and certain described personal effects and household furniture. He accounted for the presence of the stolen property upon his premises by the statement that upon his arrival at his Maryland home he was accosted by two soldiers, who said they were friends of his brother, and requested his permission to store the slot machines and music box with him; and for his consent rewarded him with five bottles of whiskey.

I. The Commonwealth called an officer of the Maryland State Police who had aided in apprehending appellant. For that purpose he had used a photograph, and the district attorney asked the witness: "Is that photograph which you had an exact likeness of the defendant here?" The officer answered: "He is a little better looking now, because it was a *penitentiary photograph.*" (Emphasis added). Appellant immediately objected, and moved for the withdrawal of a juror. The motion was overruled, but the court then and in its charge instructed the jury to disregard the testimony. It must be conceded that if the situation was curable by admonition, the instructions were adequate for that purpose.

The only inference which could be drawn from the testimony was that appellant was a former convict.[1]

---

[1] Appellant's counsel informs us that twelve years ago appellant was convicted of aggravated assault and battery, and sentenced from one to two years in the penitentiary.

It was incompetent and highly prejudicial testimony, and although the court in its opinion denying a new trial reports that the case was tried in an ideal atmosphere, without altercation or feeling between appellant's counsel and the district attorney, we are of opinion that its instructions did not and could not eradicate the effects of the statement. The environment of a trial does not furnish a final and infallible criterion by which the impact of prejudicial statements can be judged. Certainly the quiet and dispassionate utterance of a trained and obviously unwarped witness, whose official position would itself inspire confidence, is patently more devastating and lasting than a shrill accusation by a partisan and reviling witness. The testimony must have left a deep and lasting impression of truth, and, for reasons presently to be developed, we cannot confidently assert that the instructions wholly abstracted it from the interplay of impressions and convictions which generated the jury's ultimate conclusion.

The decision of the question is a delicate operation. It requires recognition of, without definitively drawing, the imponderable line where the broad legal discretion lodged in trial courts ends and the more objective review of appellate tribunals begins. Furthermore, the doctrine of harmless error, which the court below relied upon in refusing a new trial, must be given full play. That rule is a valuable adjunct to our modern law. It immeasurably strengthened our jurisprudence by freeing it from the vicious grip of strangling technicalities which too long impeded and disgraced it, and especially the administration of justice in our criminal courts. Its purpose is to cast upon the party complaining of technical or procedural errors the burden of showing that they have substantially affected his legal rights.

But the doctrine is not a mere mechanical formula to be applied automatically, indiscriminately, and against the defendant, whenever a record contains the necessary minimum evidence legally sufficient to support a convic-

tion. In such cases there is always the possibility, often the probability, that the prejudicial statement entered into the judgment, and the harmless error rule is not intended to save such a verdict from appellate condemnation. Nor is it a mathematical equation so inflexible that when the sum of the unobjectionable evidence equals conviction an appellate court must assume that the incompetent and prejudicial testimony did not enter into the calculation. On the other hand, in that class of cases of which *Com. v. Fugmann,* 330 Pa. 4, 198 A. 99, and *Com. v. Petrillo,* 341 Pa. 209, 19 A. 2d 288, are impressive illustrations, where the evidence of guilt is overwhelming, the rule has been applied and the conviction sustained, thereby promoting the cause of justice without harm to the defendant's legal right to a fair trial.

Between those two extreme categories lie cases from which a guiding rule cannot be readily deduced. A review of them would prove unprofitable, for, if they point to any discernible direction, at most they teach only that the determination of the question whether prejudice indelibly and hurtfully permeated the trial depends in the final analysis upon the facts of the individual case. The best approach to a rule we have found is the recent pronouncement by Mr. Justice RUTLEDGE in *Kotteakos v. United States,* 328 U. S. 750, 66 S. Ct. 1239, 1248. After analyzing the Act of Congress (28 U. S. C. A. §391), relating to harmless errors, he said: "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result,

apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

So, in this case, we cannot say with fair assurance that the jury was not substantially swayed by the officer's testimony. The Commonwealth's evidence may have been, as it contends, strong and convincing; no assignment questions the sufficiency of the evidence, and in this appeal we do not pass upon it; yet we observe that it was largely circumstantial. Putting to one side the question of the credibility of his witnesses, of which the jury was the sole judge, there was seemingly substantial corroboration of appellant's testimony. According to the record, the jury consumed six hours for its deliberations, and returned once for further instructions. It is not an unwarrantable assumption that it experienced trouble in arriving at a conclusion, and we cannot be certain that appellant's criminal record was not placed in the scales in the formation of the ultimate judgment. These circumstances indicate more than a possibility that appellant's legal right to a fair trial was substantially impugned by the incompetent and prejudicial testimony. The court should have withdrawn a juror, and the error was not cured by its instructions. It was serious error, and it impeaches the conviction. The first assignment of error is sustained.

II. Appellant's wife and daughter testified on his behalf. During their cross-examinations the Commonwealth laid ground for contradiction, and upon rebuttal called a police officer who testified that they had made statements inconsistent with their testimony in chief. Appellant did not object to the rebuttal testimony, but at its conclusion requested the court to "direct the jury that the testimony of the officer . . . is not received as substantive evidence, but only as affecting the credibility of" appellant's wife and daughter. In the colloquy which ensued the court requested appellant's counsel

to "show me the authority", and, apparently relevant decisions not having been instantly produced, the court overruled the motion. Appellant's counsel then moved to strike out the officer's testimony "inasmuch as it has not been admitted for the purpose of confining it solely to affect the credibility", and this motion the court also overruled. In his charge, the trial judge said only that the officer "was called in rebuttal to her [the wife's] testimony to affect her credibility".

Prior inconsistent statements of witnesses are not admissible for the purpose of establishing the truth of the facts therein contained. *Stiegelmann v. Ackman*, 351 Pa. 592, 41 A. 2d 679; *Harrah v. Montour R. R. Co.*, 321 Pa. 526, 184 A. 666; *Zavodnick v. Rose & Son*, 297 Pa. 86, 146 A. 55. They were competent for the purpose of affecting the credibility of appellant's witnesses, and upon request their admission should have been specifically limited to that purpose. *Miller v. Stem*, 12 Pa. 383; *Little v. Straw*, 326 Pa. 577, 192 A. 894; 3 Wigmore on Evidence §1018. Cf. *Com. v. Blanchard*, 345 Pa. 289, 26 A. 2d 303. Since the jury heard the colloquy and the erroneous rulings of the court upon appellant's motions, the court should have explicitly corrected its errors in its charge. It was not, in the circumstances of this case, sufficient for the court to state merely that the testimony was received to affect the witnesses' credibility. The court should have stated unequivocally that it was admissible only for that purpose, that it was not to be considered as substantive evidence, and it should have carefully explained the significance of the terms and the differences between them. There is a vast difference in the purpose which the two types of testimony serve, and unless the charge draws a clear distinction between them the jury will not ordinarily understand how and to what extent they are to be considered in casting up its verdict. Cf. *Hess v. Mumma*, 136 Pa. Superior Ct. 58, 7 A. 2d 72; *Shimer v. Penn Elec. Smelt. Corp.*, 273 Pa.

467, 117 A. 213; *Danko v. Pittsburg Rys. Co.,* 230 Pa. 295, 79 A. 511; *Scheer v. Melville,* 279 Pa. 401, 123 A. 853. The second assignment of error is sustained.

The remainder of the assignments relating to No. 2 October Sessions, 1945, are not sufficiently meritorious to require discussion, and are overruled. Those relating to No. 1 October Sessions, 1945, have not been considered for reasons herein stated.

The judgment and sentence in No. 2 October Sessions, 1945, is reversed, and a new trial is awarded. So far as this appeal was intended to apply to No. 1 October Sessions, 1945, it is quashed.