Commonwealth *v.* Boulden, Appellant.

Argued April 15, 1955. Before HIRT, ROSS, GUN-THER, WRIGHT, and WOODSIDE, JJ. (RHODES, P. J. and ERVIN, J., absent).

*Louis A. Bloom,* with him *James H. Gorbey* and *Francis J. Catania,* for appellant.

*Paul R. Sand,* Assistant District Attorney, with him *Joseph E. Pappano,* First Assistant District Attorney, and *Raymond R. Start,* District Attorney, for appellee.

OPINION BY WOODSIDE, J., September 28, 1955:

A jury found the defendant, a 53 year old automobile mechanic, guilty on two indictments charging him with corrupting the morals of two seven year old girls. The charge was brought under section 532 of the Act of June 24, 1939, P. L. 872 added by the Act of June 3, 1953, P. L. 277, section 1, 18 PS §4532.

The two girls testified that on September 1, 1954 they went into the defendant's garage to get a drink of water, and that while there he took each of them separately into a three foot deep wheel alignment pit where he molested them. Each of the girls testified that when he got her into the pit he had her sit on a scooter or cart which he used while working there, and then pulled her shorts to the side and placed his hand upon her person. He then, after having the girl get up from the cart, sat on it himself and had her sit on his lap facing him with one leg on each side of him. While in this position he exposed himself and further molested the girl.

The defendant admitted that the girls were in his garage; said they were playing with his grandchildren, and denied taking improper liberties with them. He introduced, through character witnesses, his previous good reputation and attempted to show that at the time of the alleged occurrences other people were within sight and hearing of the place of the alleged occur-

rence, so that it would have been impossible for him to have committed the acts without their knowledge.

Although there is always some inherent danger in relying upon the testimony of very young children, the girls in this case told a straight-forward story, and there is no question that the jury had the right to believe their testimony, which indeed it did.

The only question raised in this appeal relates to the admission of the testimony of a 12 year old girl by the learned trial judge and his charge thereon.

Immediately before closing the Commonwealth case the district attorney made an "off the record" offer, after which he called as a witness, Constance Williams. She was permitted to testify, over objections, that during the summer of 1953 before the start of school, she went into defendant's garage to get a drink of water, and that while there he suggested she take a ride on the cart, which she did, that when she got up the defendant sat on the cart and asked her to sit on his lap facing him, and that she refused and left the garage.

It is the admission of this girl's testimony to an alleged occurrence more than a year prior to the offenses for which defendant was indicted, that appellant contends was error.

This witness was asked on cross-examination when she had told her mother of the occurrence, and replied, "Well, I had been over (to) Sally's . . . Just before school had started . . . This year . . . And she said something about Mr. Boulden had showed her a dirty picture; and so then I had told her what happened. And somehow her mother overheard and she told Sally to go over and tell Mrs. Parker, and so Mrs. Parker called me over and she asked me what had happened; and then we went over and told my mother."

No effort was made by counsel for defendant to get the hearsay testimony concerning the picture out of the record, and no emphasis was placed upon this in the appellant's argument. It is, however, a part of the testimony of the witness to whose entire testimony there is objection.

For the purpose of this case we shall assume, but not decide, that the alleged occurrence of the summer of 1953 constituted a crime. Whether it did or not, the testimony should not have been admitted.

The general rule is that "on a prosecution for a particular crime, evidence which shows or tends to show that accused has committed another crime wholly independent of, and unconnected with, that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible." 22 C.J.S. Criminal Law §682. *Shaffner v. Commonwealth,* 72 Pa. 60 (1872) ; *Snyder v. Commonwealth,* 85 Pa. 519 (1877) ; *Swan v. Commonwealth,* 104 Pa. 218 (1883) ; *Commonwealth v. Saulsbury,* 152 Pa. 554, 25 A. 610 (1893) ; *Commonwealth v. House,* 223 Pa. 487, 492, 72 A. 804 (1909) ; *Commonwealth v. Shanor,* 29 Pa. Superior Ct. 358, 362 (1905).

In *Shaffner v. Commonwealth,* supra, page 65 it was said:

"If the evidence (of an offense not charged) be so dubious that the judge does not clearly perceive the connection (with the crime charged), the benefit of the doubt should be given to the prisoner, instead of suffering the minds of the jurors to be prejudiced by an independent fact, carrying with it no proper evidence of the particular guilt."

See also *Commonwealth v. House,* supra, page 492.

The reason for the general rule was stated by Judge, later Chief Justice, KEPHART, in *Commonwealth v.*

*Dumber,* 69 Pa. Superior Ct. 196, 200 (1918) as follows:

"'It is not proper to raise a presumption of guilt, on the ground, that having committed one crime, the depravity it exhibits makes it likely he would commit another' Shaffner v. Commonwealth, 72 Pa. 60-65. The objection to this sort of evidence is that it compels the defendant to meet a charge of which he had no notice. It confuses him in his defense, raises collateral issues, diverts the attention of the jury from the crime immediately being tried, and generally shows that the defendant should be convicted because he is a bad man."

In discussing this point Professor Wigmore said, "it cannot be argued: 'Because A did an act X last year, therefore he probably did the act X as now charged.' Human action being infinitely varied, there is no adequate probative connection between the two. A may do the act once and may never do it again; and not only may he not do it again, but it is in no degree probable that he will do it again. The conceivable contingencies that may intervene are too numerous." Wigmore on Evidence, 3rd Edition, Vol. 1, Page 641.

As to the reason for the rule Professor Wigmore has this to say on Page 646,

"The natural and inevitable tendency of the tribunal whether judge or jury is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. Moreover, the use of alleged particular acts ranging over the entire period of the defendant's life makes it impossible for him to be prepared to refute the charge, any or all of which may be mere fabrications . . .

"In early English practice this class of evidence was resorted to without limitations. But for nearly three

centuries, ever since the liberal reaction which began with the Restoration of the Stuarts, this policy of exclusion, in one or another of its reasonings, has received judicial sanction, more emphatic with time and experience. It represents a revolution in the theory of criminal trials, and is one of the peculiar features, of vast moment, which distinguishes the Anglo-American from the Continental system of Evidence."

There are, of necessity, a number of well established exceptions to the general rule, but before discussing them an examination of the rule itself is in order. The original rule of England and early America on this point was that evidence of the commission of a crime other than that charged was not admissible when relevant *merely* to show disposition. In other words if the evidence was relevant for any other purpose except to prove the defendant's disposition to commit the particular crime, or crimes generally, it was admissible.

For over a hundred years now Pennsylvania and many other jurisdictions in the United States have drifted away from the original rule and have followed the general rule first set forth above and added thereto numerous exceptions.

Had our courts followed the original rule and carefully applied it, very few of the numerous cases on the subject would have been decided differently. That is because, in a sense at least, the exceptions are aids in determining relevancy. The courts generally have not hesitated to create a new "exception" to cover a case where the evidence seemed relevant for purposes other than disposition to commit crime. For this reason, probably more than any other, it is impossible to state the exceptions with categorical precision.

The American Law Institute suggests in its Model Code of Evidence (Rule 311) that as it relates to crimi-

nal cases the rule should be substantially as follows: Evidence that a person committed a crime on a particular occasion is inadmissible to prove that he committed a crime on another occasion if, but only if, the evidence is relevant solely as tending to prove his disposition to commit such a crime or to commit crimes generally.

The institute apparently was persuaded to adopt this rule by a very cogent article written by Julius Stone in the Harvard Law Review in 1938 (Vol. 51, Page 988).

We are not suggesting that the Law Institute rule is, or should be treated by us as, the rule of this Commonwealth. We would not do so if we could, and could not if we would. The rule applied in Pennsylvania is too well established and has been too frequently repeated to suggest that this court could or should change it.

We refer to the original rule to which England and some of our jurisdictions have returned and which is contained in the Model Code of Evidence for only one reason. That is to understand the basic and underlying principles from which our rule and its exceptions evolved, so that by limiting our exceptions too much, we do not use the general rule to reject important relevant testimony, and by adopting too many exceptions we do not destroy the very rule upon which the whole principle and policy rests.

As was stated by Professor Stone, supra, page 1033:

"Because attention is concentrated on interpreting the list of exceptions, not only is the requirement of relevancy forgotten, but the very object of the original rule—to prevent proof of guilt by proof of propensity to commit—is quite forgotten and eventually an exception is admitted to the broad rule which admits evi-

dence precisely for the reason that the original rule excluded it."

With these thoughts in mind let us turn to the exceptions to the general rule which have been formulated by the courts of this Commonwealth.

Under the exceptions the commission of an offense by the defendant other than the one with which he is charged may be received for the purpose of showing intent, guilty knowledge, motive, identity, plan, the accused to be one of an organization banded together to commit crimes of the nature charged, part of a chain of circumstances or one of a sequence of acts, or part of the natural developments of the facts, or mental condition, when insanity is a defense or, within limitations, for the purpose of fixing the penalty in murder cases. *Commonwealth v. Williams,* 307 Pa. 134, 148, 160 A. 602 (1932).

To these exceptions listed in the *Williams* case might be added two additional ones to wit, if the evidence of the other offense shows the state of mind of the defendant at the time of the commission of the offense charged and if the evidence is contained in a confession voluntarily made containing the facts of the crime charged.

Although authorities seem to be in accord on the broad general principles, the application of them has led to irreconcilable conclusions. In 22 C.J.S. Criminal Law §682, it is said: ". . . courts are not divided on the abstract rules, but are in hopeless confusion in their application to particular facts." It might, therefore, be advisable to review a few of the numerous Pennsylvania cases bearing on these exceptions, so that their application can be better understood.

Under the following circumstances evidence of the commission of offenses other than those for which de-

fendant was indicted, were held to be properly admitted.

Where defendant charged with delivering goods from a warehouse without the warehouse receipt, a statutory crime, evidence that he had done the same thing before was admitted to show that the act charged was intentional and willful, and not accidental, and to establish guilty knowledge. *Commonwealth v. Rink (No. 1),* 71 Pa. Superior Ct. 579, 584 (1919). For other examples see *Commonwealth v. Bell,* 288 Pa. 29, 35, 135 A. 645 (1927); *Commonwealth v. Luccitti,* 295 Pa. 190, 197, 145 A. 85 (1928); *Commonwealth v. Elias and Johns,* 76 Pa. Superior Ct. 576 (1921); *Commonwealth v. Huster,* 118 Pa. Superior Ct. 24, 31, 178 A. 535 (1935).

To establish the motive for the murder of a girl pregnant to the defendant, letters which were written to a girl whom he wished to marry and which contained evidence of other crimes committed by the defendant were admitted. *Commonwealth v. Edwards,* 318 Pa. 1, 178 A. 20 (1935).

Where a father was charged with incestuous fornication with his daughter evidence of a number of prior offenses with the same daughter was admitted as a "series of acts indicating continuousness of sexual intercourse," under the "sequence of acts" theory. *Commonwealth v. Bell,* 166 Pa. 405, 31 A. 123 (1895).

Where a person was charged with murder, evidence that he was a member of a secret organization which engaged in a number of criminal acts was admitted. *Hester v. Commonwealth,* 85 Pa. 139 (1877), ("Mollie Maguires"); *Commonwealth v. Fragassa,* 278 Pa. 1, 4, 122 A. 88 (1923) (Black Hand Society).

If the evidence of the commission of another unrelated crime is contained in a voluntary statement to the police describing the offense charged, it has been

admitted. *Commonwealth v. Young,* 172 Pa. Superior Ct. 102, 106, 92 A. 2d 445 (1932); *Commonwealth v. Hipple,* 333 Pa. 33, 40, 3 A. 2d 353 (1939); *Commonwealth v. Weston,* 297 Pa. 382, 388, 147 A. 79 (1929).

If the evidence of the commission of another crime is so connected that proof of the one charged necessarily means proving the other such proof is admissible as where it is a part of the res gestae, *Commonwealth v. Coles,* 265 Pa. 362, 108 A. 826 (1919); *Commonwealth v. Bennett,* 110 Pa. Superior Ct. 303, 305, 168 A. 499 (1933), or as where one robbed to flee another crime, *Commonwealth v. Weiss,* 284 Pa. 105, 130 A. 403 (1925). Evidence of another crime is admissible where the other crime and the one charged constitute a continuing offense, as where a robbery immediately follows or precedes a murder. *Commonwealth v. Brooks,* 355 Pa. 551, 50 A. 2d 325 (1947); *Commonwealth v. Darcy,* 362 Pa. 259, 281, 66 A. 2d 663 (1949); *Commonwealth v. Foster,* 364 Pa. 288, 292, 72 A. 2d 279 (1950).

The three last cited cases, along with *Commonwealth v. Williams,* supra, are authority for the admission of evidence of non-related offenses, of a limited type described in the *Williams* case, for the purpose of aiding in the fixing of the penalty should the jury find the defendant guilty of murder of the first degree.[1]

Evidence of the commission of another offense is admissible if necessary for the purpose of proving the

---

[1] When the issue is penalty instead of guilt evidence of prior offenses is relevant, and the general rule is not applicable. In all other exceptions to the general rule the prior offense is relevant because of some reason *other than* showing depravity and propensity, but in sentencing, prior offenses are relevant to show depravity and propensity, for these are involved in determining what the sentence should be.

essentials of a crime for which the defendant is being tried, such as showing he was charged with a crime when he attempted to commit embracery. *Commonwealth v. Benedict,* 113 Pa. Superior Ct. 504, 507, 173 A. 853 (1934).

Where the defendant is charged with arson of a barn in which tobacco owned by him was stored, evidence that he attempted to burn the barn at an earlier time when his tobacco was stored there was admitted to show motive. *Commonwealth v. Habecker,* 113 Pa. Superior Ct. 335, 338, 173 A. 831 (1934).

Evidence of other offenses is admissible if it shows a scheme, or plan, or design as where a group of ruffians attack several different men the same night, *Commonwealth v. Krolak,* 164 Pa. Superior Ct. 288, 64 A. 2d 522 (1949), or as where one charged with receiving stolen goods is shown to have organized and encouraged a group of boys to steal, *Commonwealth v. Elias and Johns,* supra, 76 Pa. Superior Ct. 576, 580 (1931); or as where several murders were committed to collect insurance money, the sum collected on the first being used to pay the premium of the policies taken out on the lives of the others. *Commonwealth v. Chalfa,* 313 Pa. 175, 186, 169 A. 564 (1933). See also *Commonwealth v. Strantz,* 328 Pa. 33, 195 A. 75 (1937), and *Commonwealth v. Rabinowitz,* 73 Pa. Superior Ct. 221, 227 (1919).

In the case before us there is no question of identity, or motive, or intent, or guilty knowledge, which the testimony of the Williams girl will aid the jury in solving. Her testimony shows no plan, scheme or design of the type which existed in the above cases where evidence of the commission of other offenses was admitted. A single act with a different child over a year before could not be a "sequence of acts."

What then could have been the purpose of admitting her testimony? The purpose, in the words of the trial judge to the jury, was to "indicate to this jury, if believed beyond a reasonable doubt, that the defendant was a person of the type who would or could under the same circumstances commit the acts charged against him;" and to determine whether "this is the type of individual . . . who would have . . . a moral trait of more or less constant nature."

The one principal that stands above the "hopeless confusion"—the one which the courts have almost without exception accepted, approved and applied both in this jurisdiction and others,—is that evidence that accused committed other crimes, even if they were of like nature to that charged, is not admissible to show his depravity or criminal propensities or the resultant likelihood of his committing the offense charged. 22 C.J.S. Criminal Law §682 and the numerous cases there cited.

Our courts have repeatedly said, "It is not proper to raise a presumption of guilt, on the ground, that having committed one crime, the depravity it exhibits makes it likely he would commit another." *Shaffner v. Commonwealth,* 72 Pa. 60, 65, (1872); *Commonwealth v. Dumber,* 69 Pa. Superior Ct. 196, 200 (1918).

In practically every case cited in this opinion it has been said in one form or another that evidence of a crime independent and distinct from the one charged cannot be received to prove a disposition to commit crime.

The evidence of the Williams girl having been admitted specifically for this purpose, and it being so stated in the charge, we would be forced to grant a new trial for that reason alone, even if it were admissible for other reasons. *Commonwealth v. Lipschutz,*

89 Pa. Superior Ct. 142 (1925). But it is not admissible for any purpose.

It is suggested by the court below that it is admissible because "it tends to show the state of mind of the defendant upon the act of which he is accused." The defendant's "state of mind" *at the time of the offense charged* cannot be shown by an incident occurring over a year before that time.

Evidence of robberies committed the same night as the offense for which the defendant is on trial, as in the *Darcy* and *Foster* and *Brooks* cases, or of a series of assaults as in the *Krolak* case, or of rapes as in the *Ransom* case (hereinafter considered), show "state of mind" at the time of the commission of the offenses charged, but "state of mind" cannot refer to depravity or wickedness generally, else the rule to which all cases pay tribute would be entirely destroyed.

In *Commonwealth v. Winter,* 289 Pa. 284, 290, 137 A. 261 (1927), where evidence of an attempt to commit a criminal offense several hours before the murder with which defendant was charged, it was said that "anything which throws light upon his state of mind *just previous to the commission of the offense with which he is charged* strongly illuminates his place in the picture of the crime and gives better opportunity to estimate the likelihood of his connection with it." (emphasis ours)

The state of mind that will permit the admission of an unrelated crime is the state of mind at the time of the commission of the offense as shown by the acts or words of the defendant so close in time to the alleged offense as to have bearing upon his state of mind at that time. Defendant's conduct over the years cannot be shown to prove he has a depraved or wicked state of mind generally.

In sex cases courts have been more liberal in the admission of evidence of offenses other than that charged. Although in some types of sex offenses and under some circumstances there may be justification in this approach, there is a grave question whether the distinction as frequently applied is not the result of an emotional rather than a logical approach to the issue. As a matter of fact in some respects there should be no distinction between sex offenders and other offenders, while in other respects there should be a distinction between different types of sex offenders.

In actuality, is one with a record of indecent exposure more likely to commit rape than one with a record of assault and battery so that evidence of previous conviction of the sex offenses should be admitted and evidence of the non-sex offense rejected? Are there more recidivists among sex offenders than among thieves or other offenders?[2] Should evidence of pre-

---

[2] The answer to this question is "no".

In a news release of December 13, 1949 Chairman H. C. Hill of the Pennsylvania Parole Board stated: "Sex offenders, as compared with other types of criminals on parole, are by far the least likely to be returned to prison for repetition of the same kind of crime." In the same release he pointed out that of 31 sex criminals then under parole in certain western counties only two had previously been convicted of sex crimes, and that of 399 parole cases of sex offenders closed during the prior two years only 1.5% were involved in the repetition of sex crimes.

A study made by the Pennsylvania Parole Board in 1954 covering a period of seven years shows that of 1469 sex offenders on parole whose cases were closed during that period only 3.4% had repeated sex crimes. 3.8% of the sex offenders committed new non-sex offenses. Thus, only 7.2% of all sex offenders on parole whose cases were closed during that period were convicted of new crimes. This percentage was less than half that of the non-sex offenders. 15.5% of offenders of all types on parole whose cases were closed during the same period had been convicted of new crimes.

In an article in the June 1955 issue of "Federal Probation", a journal published by the administrative office of the U. S. Courts

vious conviction of prostitution be admitted against one charged with that offense, and evidence of previous conviction of pickpocketing not be admitted against one charged with that offense? These are only a few of the questions which must be answered in the affirmative before a court can say with logic that the general rule *should not* apply to sex offenses and therefore *does not* apply to sex offenses.

Let us again refer to the reasons for the adoption of the general rule so that we may determine whether or not they are as applicable to sex offenders as to other offenders.

The reasons set forth by both our Supreme Court and Wigmore are that to hold otherwise would (1) cause the defendant to meet a charge of which he had no notice and make it impossible for him to refute

---

in cooperation with the Bureau of Prisons of the Department of Justice, Dr. Paul W. Tappan of New York University states, page 8: "Sex offenders have one of the lowest rates as 'repeaters' of all types of crime. Among serious crimes homicide alone has a lower rate of recidivism. Careful studies of large samples of sex criminals show that most of them get in trouble only once. Of those who do repeat, a majority commit some crime other than sex."

In the annual reports of the Federal Bureau of Investigation the percentage of persons arrested who had prior criminal records of any kind is listed under 25 types of offenses. Rape and "other sex offenses" consistently rank between 15th and 20th. The report further shows that in most instances recidivists arrested for sex offenses had prior convictions of crimes other than sex crimes.

The Mayor's Committee for the study of sex offenses in New York City determined from a study of a ten year period that "convicted sex offenders are less inclined to have had police records than other types of felons." The committee further reported they had "convincing proof that sex crime is not habitual behavior with the majority of sex offenders."

Reports indicating similar findings have been made by the Medical Center for Federal Prisons, the New Jersey Diagnostic Center and California and Minnesota correctional institutions.

fabricated charges; (2) raise collateral issues and divert the attention of the jury from the crime being charged; (3) result in the proof of the prior offenses being taken by the jury as justifying a condemnation of the defendant irrespective of his guilt of the offense charged. It is self evident that these three reasons are as applicable to sex offenses as to other offenses. The fourth reason given by the Supreme Court and Wigmore for the rule is that because A did act X last year it is no indication that he did act X as now charged. Although the soundness of this last statement is almost universally accepted by the Courts of the United States and England let us assume there is room to debate its validity under certain circumstances. Let us then see whether the above statement would be invalid when applied to sex offenses. Whether the statement has validity in any case depends largely upon the likelihood that an offender will repeat an offense he previously committed. As pointed out in Footnote 2, supra, sex offenders are no more likely to repeat than other offenders.

Thus since all the reasons for applying the rule are as applicable to sex offenders as to other offenders, there is no more reason to admit prior offenses to show depravity or propensity in a sex case than in any other case. Nor is there any reason to contort the exceptions to the general rule in order to permit the admission of evidence of a former offense, when in fact the only purpose is to show depravity or propensity.

Furthermore, it is unfortunate that in the thinking of both lawyers and laymen "sex offenders" are classified as one type of offender. For many purposes, including for the rule under discussion, they cannot properly be so classified. For example, that a defendant committed prior sex offenses might in some cases be an indication of his guilt, and in other cases an indica-

tion of his innocence. That a defendant had a number of previous homosexual offenses might be indicative of a propensity for the commission of the sex offense of sodomy, but might well suggest the unlikelihood of his commission of the sex offense of rape.

In considering whether a different principle of law is to be applied because of the offense charged, the use of sex offenses as a classification, without attention to the particular sex offense charged would be illogical. Therefore, we must determine here not only whether there should be an exception to the general rule in sex cases generally, but also whether there should be an exception to the general rule in the cases of adult men molesting young girls.

According to A.L.R. in cases of indecent liberties taken with children "The decisions are in accord that, unless it forms a part of the res gestae, evidence of sexual offenses committed against others than the prosecuting witness is inadmissible in a prosecution for taking indecent liberties with child." 167 A.L.R. 622 and the following cases there cited: *Dockerty v. People,* 74 Colo. 113, 219 P. 220 (1923) ; *People v. Rogers,* 324 Ill. 224, 154 NE 909 (1926) ; *People v. Herzberger,* 372 Ill. 251, 23 NE 2d 37 (1939) ; *People v. Luce,* 210 Mich. 621, 178 NW 54 (1920) ; *People v. Dean,* 253 Mich. 434, 235 NW 211 (1931) ; *State v. Julius,* 3 N. J. Misc. R. 202, 127 A. 577 (1925) ; *State v. Flath,* 61 ND 342, 237 NW 792 (1931) ; *Bielecki v. State (Texas Crim.),* 145 SW 2d 189 (1940).

Recidivism among men who molest young girls is relatively low. A large percentage of these cases, like the one before us, concerns men in their fifties or sixties who have never before been in trouble.

In admitting the disputed evidence in the case before us the court below relied upon *Commonwealth v. Kline,* 361 Pa. 434, 65 A. 2d 348 (1949). Because the

*Kline* case has been relied upon in a number of recent lower court cases it merits careful consideration here. The defendant therein was charged with statutory rape upon his 15 year old daughter. Her testimony was that while she was in bed her father came into her room nude, and that when she got out of bed he put his arms around her, raised her nightgown and penetrated her. On cross-examination he was asked whether during the month of the offense he had exposed himself without clothes to anybody. When he denied that he had, Mr. and Mrs. Borg, his neighbors, were called in rebuttal and testified that for a considerable period of time on a day late in October he exhibited himself in a nude condition on his back porch to Mrs. Borg every time she went out on her porch. The case gave the Appellate Courts considerable difficulty, our Court holding that the testimony was improperly admitted while the Supreme Court with the present Chief Justice and Justice ALLEN STEARNE dissenting, held the opposite.[3]

It is not clear from the Supreme Court's opinion under which of the exceptions it considered this evidence admissible, although it was suggested that evidence of this kind could be admitted if it furnishes "a link in a chain of circumstances," or indicates "the state of mind of the prisoner," or "shows the plan or design on the part of the defendant to commit such crimes."

The prior offense in the *Kline* case was neither a "link in a chain of circumstances" nor "a plan or design" as the terms are generally used in the numerous cases both within and without this jurisdiction. If the event took place on the same day, and possibly

---

[3] The six judges now on the Appellate Courts who sat on the case, all then considered it erroneously decided.

within a very few days, it might have been evidence of the "state of mind" of the defendant at the time of the alleged attack and as such would be admissible under the authority of numerous cases. The date of the alleged rape was October 20 and the testimony of the witnesses concerning the exposure was that it took place the latter part of October. There was thus a close relationship in time, with the probability that the events occurred within a week of each other and the possibility that they occurred the same day. The rule applied in that case should not be extended. Under no circumstances does the occurrence of an incident a year prior to the offense charged fall within the rule of the *Kline* case.

In *Commonwealth v. Ransom,* 169 Pa. Superior Ct. 306, 82 A. 2d 547 (1951) this Court speaking through President Judge RHODES, and upon the authority of the *Kline* case, approved the admission of evidence in a rape case that on the same night the defendant attempted to rape another person and two days earlier had raped a third person. The attempted rape on the same night was clearly admissible for various reasons under all the authorities, and the rape two days prior thereto was admissible to show identity which was in issue. Because these offenses were so closely related in time, and because identity was in issue, that case is not authority for the instant case where the offenses were a year apart and identity was not in issue.

That the Supreme Court intends to require strict compliance with the general rule is demonstrated by their recent reversal of this Court in the case of *Commonwealth v. Burdell,* 380 Pa. 43, 47, 110 A. 2d 193 (1955), where the Chief Justice speaking for the court again said: "One of our most fundamental and prized principles in the administration of criminal law is that a distinct crime, except under certain special cir-

cumstances, cannot be given in evidence against a defendant who is being tried for another crime."

We can find no case in this jurisdiction under the facts and reasoning of which the testimony of the Williams girl in this case would have been properly admitted. Of the thousands of cases in other jurisdictions there may be several which could be cited as authority for the Commonwealth's position, but such cases are extremely rare and to follow their reasoning would eliminate entirely, at least in sex cases, "one of our most fundamental and prized principles in the administration of criminal law."

The only purpose of the Williams girl's testimony was to show depravity or propensity, and for this purpose it was not admissible.

Her testimony, including the hearsay that defendant showed "a dirty picture" to another young girl, undoubtedly had a tremendous effect upon the jury. Although the jury could have, and might have, convicted the defendant without hearing the testimony of the Williams girl, the defendant is entitled to a trial without being prejudiced by her testimony.

Judgment reversed and a new trial granted.

HIRT and WRIGHT, JJ., concur in the result.