Commonwealth *v.* Savor, Appellant.

470

Argued November 17, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Norman Paul Wolken,* with him *Wolken & Landy,* for appellant.

*Albert A. Fiok,* Assistant District Attorney, with him *James F. Malone, Jr.,* District Attorney, for appellee.

OPINION BY WRIGHT, J., January 17, 1956:

Peter Savor, James Clegg and Joseph Reese were indicted in the Court of Oyer and Terminer of Allegheny County on a charge of armed robbery. Reese pleaded guilty, and was a witness for the prosecution at the trial of Savor and Clegg. During the morning session, Reese was questioned by the district attorney as follows: "Q. How long have you known Mr. Clegg and Mr. Savor? A. Well, I met Mr. Savor in 1943 in the Western State Penitentiary . . . Q. You met Mr. Savor in 1943 in the Western State Penitentiary?" Savor's attorney then addressed the court: "Your Honor, I object to the answers being given by the witness, as being prejudicial to the defendant". This objection was sustained: "Yes, we will sustain that objection, and strike so much of the statement from the record as indicates that the defendant, Savor, had been in the Western Penitentiary". The trial judge then said to the jurors: "We tell the Jury to disregard that because that might be construed by you as evidence of a conviction of some former crime, and that should not be any evidence to tell against the defendant Savor in the trial of this case. I ask you to take that from your mind". After the noon recess, Savor's attorney made a motion to withdraw a juror, which motion was denied. Both Savor and Clegg were convicted. No motion was made for a new trial. Sentence was imposed, and this appeal by Savor followed.

Appellant's sole contention is that it was reversible error for the trial judge to refuse to withdraw a juror. In limine, it should be noted that the court below was not afforded an opportunity to pass upon this question. For this reason the appeal should be dismissed. See *Commonwealth v. Aikens*, 179 Pa. Superior Ct. 501, 118 A. 2d 205; *Commonwealth v. Pittman*,

179 Pa. Superior Ct. 645, 118 A. 2d 214. However, since appellant's attorney at the trial was immediately thereafter called into army service, the Commonwealth "does not desire to press this technical point". Under the circumstances, we have concluded to dispose of the appeal on the merits.

It is of course true, as appellant contends, that a distinct crime, except under certain special circumstances, cannot be given in evidence against a defendant who is being tried for another crime: *Commonwealth v. Burdell,* 380 Pa. 43, 110 A. 2d 193. However, this proposition does not necessarily operate to make inadmissible a statement as to where a witness first met the defendant. For instance, in *Commonwealth v. Robinson,* 163 Pa. Superior Ct. 16, 60 A. 2d 824, it was said that the Commonwealth "had a right to show the first identification of the defendant by the prosecuting witness, whether she saw him on the street and had him arrested, or whether she saw him *in a prison cell while being held for some other offense* (italics supplied)". See also *Commonwealth v. Biancone,* 175 Pa. Superior Ct. 6, 102 A. 2d 199, in which case the victim of a robbery was permitted to testify that he made his first identification of the defendants in a prison. While appellant's identity was not at issue in the case at bar, the theory of his defense was that he was unaware of any unlawful design.[1] Therefore it would seem that the prior intimacy of the participants should constitute relevant evidence, notwithstanding the incidental and unsolicited disclosure that

---

[1] Appellant did not enter the premises in which the robbery took place, remaining outside in the get-away car. However, Reese testified that appellant knew of the intended robbery, that appellant's revolver was used, as well as his automobile, and that appellant received an equal share of the loot.

their acquaintance had its inception in the penitentiary. In *Commonwealth v. Biddle,* 200 Pa. 647, 50 A. 264, three defendants were jointly indicted for a murder committed in the act of buglary. One was permitted to testify as to the criminal concert of the three long anterior to the particular crime under investigation, even though other crimes were mentioned by the witness in a general way, but without attempt on the part of the Commonwealth to elicit such evidence. See also *Commonwealth v. Robb,* 284 Pa. 99, 130 A. 302.

Howbeit, the Commonwealth concedes on this appeal that the remark of the witness was improper. "The question then arises as to how the error should be corrected; whether by withdrawing a juror or by striking out the testimony and admonishing the jurors to disregard the irrelevant testimony. This usually involves a consideration of the circumstances under which the irrelevant evidence was given and its probable effect on the jury": *Saunders v. Commonwealth,* 345 Pa. 423, 29 A. 2d 62. The best approach to a rule was enunciated in *Commonwealth v. Blose,* 160 Pa. Superior Ct. 165, 50 A. 2d 742, wherein we adopted the following language of Mr. Justice RUTLEDGE in *Kotteakos v. United States,* 328 U. S. 750, 66 S. Ct. 1239: "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase

affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand".

In the case at bar, we are satisfied from our review of the record that appellant received a thoroughly fair trial and was properly convicted. Indeed, a verdict of not guilty would have been a miscarriage of justice. We can say with assurance that appellant was not prejudiced by the alleged improper remark. It is therefore our conclusion that the unsolicited observation here challenged, and concerning which the jury was promptly admonished, does not constitute a sufficient reason for the grant of a new trial.

The judgment of sentence is affirmed.

---

DISSENTING OPINION BY ROSS, J.:

I cannot agree with the majority that so admittedly prejudicial a remark can be cured simply by instructions to the jury and I therefore file this dissent. My concern arises essentially from the role this decision will play as a further addition to the growing number of precedents which have steadily whittled away at the evidentiary safeguards surrounding the fair trial guaranteed to defendants who are *charged* with the commission of crimes. The theory that the prejudicial effect can be weighed and then cured by instructions to the jury is unrealistic to the utmost and should not be extended. When a matter is considered harmful, its prejudice is delivered to the jury the instant it is uttered, and all the instructions given thereafter cannot erase its impression. Thoughts in the minds of jurors cannot be turned off and on by the switch of judicial verbiage. They are humans, and once exposed to the

prejudicial matter, cannot thereafter disregard it completely. Remarks of this nature are so harmful in themselves that there should be no doubt of their tendency to influence the jury adversely. In such an instance, we cannot with reasonable assurance, say it had no harmful effect. Our only course should be to give the defendant the benefit of the doubt imbedded in our system of laws, and award a new trial.

When Reese, in response to a question by the district attorney, uttered that he first met appellant in 1943 in the Western State Penitentiary, he conveyed to the jury not only the fact that he knew Savor in 1943, but that Savor was in the penitentiary serving sentence for prior conviction of a crime. If it was not clear to the jurors then, the district attorney made it so by repeating: "Q. You met Mr. Savor in 1943 in the Western State Penitentiary?" Obviously the thought was then firmly implanted in the minds of the jury that appellant was a convict. If there was *still* some doubt in the minds of the jurors whether Savor was previously a convict, it vanished when the court said: "We tell the jury to disregard that because that might be construed by you as evidence of a conviction of some former crime." In *Com. v. Blose,* 160 Pa. Superior Ct. 165, 50 A. 2d 742, cited by the majority, a police officer was asked whether a photograph was a likeness of the defendant. He answered (page 168) : " 'He is a little better looking now, because it was a *penitentiary photograph.*' " Judge RENO, in commenting on this remark said (page 168) : "The only inference which could be drawn from the testimony was that appellant was a former convict. It was incompetent and *highly prejudicial testimony,* and although the court in its opinion denying a new trial reports that the case was tried in an ideal atmosphere, . . . we are of opinion

that *its instructions did not and could not eradicate the effects of the statement.* The environment of a trial does not furnish a final and infallible criterion by which the impact of prejudicial statements can be judge . . . The *testimony must have left a deep and lasting impression of truth,* and, for reasons presently to be developed, we cannot confidently assert that the instructions wholly abstracted it from the interplay of impressions and convictions which generated the jury's ultimate conclusion." (Italics supplied) How much more emphatically could the matter of Savor's prior conviction gotten to the jury than through the triple utterance by the witness, the district attorney, and the court. This was no mere statement that the witness viewed a penitentiary photograph of Savor, but that the witness, himself an admitted convict and self-confessed perpetrator of the armed robbery in question, knew defendant when he was confined in the Western State Penitentiary.

*Shaffner v. Com.,* 72 Pa. 60, is one of the outstanding forerunners of the principle that a distinct crime, unconnected with the one for which defendant is being tried, cannot be admitted in evidence against him. Mr. Justice AGNEW, in the course of his opinion stated at page 65: (60) "It is not proper to raise a presumption of guilt, on the ground, that having committed one crime, the depravity it exhibits makes it likely he would commit another. Logically, the commission of an independent offence is not proof, in itself, of the commission of another crime. *Yet it cannot be said to be without influence on the mind, for certainly, if one be shown to be guilty of another crime equally heinous, it will promote a more ready belief, that he might have committed the one with which he is charged; it therefore predisposes the mind of the juror* to believe the prisoner

guilty. To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish; or it must be necessary to identify the person of the actor, by a connection which shows that he who committed the one must have done the other. *Without this obvious connection, it is not only unjust to the prisoner to compel him to acquit himself of two offences instead of one, but it is detrimental to justice to burthen a trial with multiplied issues that tend to confuse and mislead the jury.* The most guilty criminal may be innocent of other offences charged against him, of which, if fairly tried, he might acquit himself. From the nature and prejudicial character of such evidence, it is obvious it should not be received, unless the mind plainly perceives that the commission of the one tends, by a visible connection, to prove the commission of the other by the prisoner. *If the evidence be so dubious that the judge does not clearly perceive the connection, the benefit of the doubt should be given to the prisoner, instead of suffering the minds of the jurors to be prejudiced by an independent fact, carrying with it no proper evidence of that particular guilt."* (Italics supplied.)

Mr. Chief Justice STERN in *Com. v. Burdell,* 380 Pa. 43, 110 A. 2d 193, examined this very problem and concluded that unless well within one of the recognized exceptions[1] such prejudicial testimony is inadmissible

---

[1] In this case, there was no question of identity at issue as in the *Robinson* and *Biancone* cases cited in the majority opinion. The majority does intimate that the remark *might* be relevant to rebut the defense of unawareness of any unlawful design. The answer to that is that the Commonwealth did not offer it for any such purpose, (In fact it did not *offer* it), and further it was elicited by it on direct examination in its case in chief—before the defendant ever attempted to put in his defense.

and must result in a reversal. There, evidence of an alleged extortion involving the same defendant and accomplices and essentially the same victim (a husband in one, his wife in the other) occurring but two days prior, was inadmissible in the trial for the subsequent armed robbery. There can be no question that this decision was indicative of the Supreme Court's intention to strictly enforce the rule, and that unless within one of the exceptions, evidence of prior crimes will be held inadmissible as prejudicial, and grounds for a new trial.[2]

One of the other errors in the *Burdell* case was the introduction of a police photo of defendant which had been used by the victim to identify the defendant. The discussion relative to this error succinctly indicates the inherent prejudice of the remark here (page 51): "It was a Bertillon or police picture and it showed a card or plate attached to his coat lapel with an inscription thereon disclosing that the photograph came from the Allegheny County Detective Bureau. To make the matter worse, the District Attorney and county detectives were allowed to explain that defendant was under arrest 'charged with some crime' at the time the picture was taken. *Even if there was any proper purpose in the offer of the photograph into evidence it was certainly improper not to delete the matter printed thereon, because the jury would necessarily be prejudiced by disclosure of the fact that defendant had been charged years before with the commission of another crime.*" (Italics supplied)

The majority relies heavily upon *Saunders v. Com.*, 345 Pa. 423, 29 A. 2d 62, and *Com. v. Blose*, 160 Pa. Superior Ct. 165, 50 A. 2d 742 and excerpts therefrom.

[2] For a comprehensive and informative discussion of this problem see *Com. v. Boulden*, 179 Pa. Superior Ct. 328, 116 A. 2d 867.

These cases do not flatly support their action. The quotation from page 425 of the *Saunders* case that correction of this admitted error "usually involves a consideration of the circumstances under which the irrelevant evidence was given and its probable effect on the jury" shows only part of the entire rule and indicates its inapplicability to this situation. In the very next paragraph of the *Saunders* case, it is stated (page 425) : "Of course, *where evidence improperly admitted is of a sort which tends to prejudice the minds of the jurors, the error is not cured by a charge withdrawing it from their consideration* . . .; but where the evidence is not of this character and the charge eliminates it from the jury's consideration there is no cause for complaint." (Italics supplied) The remark here beyond question is of the type which tends to prejudice the minds of the jurors. "A consideration of the circumstances under which . . . [it] was given" is therefore not only unnecessary, but improper under this rule. Of like import is the majority's reliance upon the quotation of Mr. Justice RUTLEDGE in *Kotteakos v. United States,* 328 U. S. 750, 66 S. Ct. 1239, 1248 as it appears on page 170 of the *Blose* case, supra, 160 Pa. Superior Ct. 165. While the first part of that rule says that if after examining the error, the court is sure it had no or slight influence on the verdict it is harmless, the second paragraph indicates: "But if one cannot say, *with fair assurance,* after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, *or if one is left in grave doubt,* the conviction cannot

stand." (Italics supplied) So obviously prejudicial a remark cannot be said to have played an unsubstantial part in Savor's conviction, at least not with any "fair assurance." In the *Blose* case which quotes this language, the mere remark "penitentiary photograph" was sufficient to require the granting of a new trial. The remark here was not only of equal prejudice but far more since it came from the mouth of a self-confessed criminal, purported accomplice, and received the underscoring of the district attorney's repetition. How can we say that a remark of at least equal import is reversible error in one case and not in another? We cannot and should not.

If a remark is by its nature prejudicial, it will prejudice any case. The "approaches" of the *Saunders* and *Blose* cases, supra, are but general guides, worded in general language. Once a remark is established as prejudicial, as this one admittedly is, the proper procedure is not to indulge in any further "weighing" of its possible effect upon the jury. Whether, as the majority seems to believe, an acquittal would be a miscarriage of justice has no place in determining the prejudicial effect. The majority in fact does what the *Kotteakos* rule prohibits—"The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error." No one can guess what role such remark played in the deliberations. The doubt rests in defendant's favor and he should be given it. Our courts, in negligence cases, do not "weigh" the circumstances when a plaintiff brings out that the defendant is insured. *Scranton Gas and Water Co. v. Weston,* 63 Pa. Superior Ct. 570, 575. Is the liberty of an individual any less important than the property of an insurance company? The question should answer itself.

Mr. Chief Justice STERN, in *Com. v. Burdell,* supra, 380 Pa. 43 at 47 states what in my opinion is the controlling principle here. "One of our most fundamental and prized principles in the administration of criminal law is that a distinct crime, except under certain special circumstances, cannot be given in evidence against a defendant who is being tried for another crime. This is because the fact that a person has committed one offense is not proof that he has committed another and *because the effect of such testimony upon a jury is nevertheless bound to create prejudice and an emotional reaction on their part against the defendant."* (Italics supplied)

Of like persuasion is this language in *Com. v. Dumber,* 69 Pa. Superior Ct. 196, 200: " 'It is a general rule that a distinct crime, unconnected with that laid in the indictment, cannot be given in evidence against a prisoner. *It is not proper to raise a presumption of guilt, on the ground, that having committed one crime, the depravity it exhibits makes it likely he would commit another'*: Shaffner v. Com., 72 Pa. 60-65. The objection to this sort of evidence is that it compels the defendant to meet a charge of which he had no notice. It confuses him in his defense, raises collateral issues, *diverts the attention of the jury from the crime immediately being tried, and generally shows that the defendant should be convicted because he is a bad man.* We do not intend to modify this principle." (Italics supplied)

We should never lose sight of the fact that when we lay down a principle of law or establish a precedent, it will apply not only to the guilty but to the innocent. This defendant may be guilty—perhaps, as the majority states, he is. But that is beside the point. From the moment the jury learned that he had a penitentiary record, he—guilty or innocent—didn't have a

"Chinaman's chance" of escaping conviction. In other words he, in my judgment, did not have a fair trial.

I would, therefore, reverse the judgment of sentence and award a new trial.