UNITED STATES of America ex rel.
Gerald OWENS

v.

Leonard J. MACK, Supt., State Correctional Institute, Dallas, Pennsylvania.

Civ. A. No. 73-1364.

United States District Court,
E. D. Pennsylvania.

Aug. 27, 1974.

Kirk T. Karaszkiewicz, Philadelphia, Pa., for plaintiff.

Stephen J. McEwen, Jr., Dist. Atty., Media, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

BRODERICK, District Judge.

Presently before this Court is relator's petition for a writ of habeas corpus. Relator is presently incarcerated at the State Correctional Institute at Dallas, Pennsylvania, serving a sentence of imprisonment of not less than ten nor more than twenty years imposed by the Court of Common Pleas of Delaware County after a jury verdict of guilty for murder in the second degree and conspiracy.

Following the denial of post-trial motions in arrest of judgments or for a new trial, the prison sentences were imposed on both convictions with sentences to run concurrently. An appeal from the sentence imposed on the murder conviction was timely filed in the Supreme Court of Pennsylvania. An appeal from the sentence imposed on the conspiracy conviction was filed in the Superior Court of Pennsylvania and subsequently certified to the Supreme Court of Pennsylvania. On April 20, 1972 the judgments were affirmed by the Supreme Court of Pennsylvania. Commonwealth v. Owens, 447 Pa. 294, 289 A.2d 721 (1972).

The petition for writ of habeas corpus, as originally filed in this Court, asserted the same claims as those raised on post-trial motions and on appeal to the Pennsylvania Supreme Court, i. e., (1) that the trial evidence was insufficient to warrant the convictions of second degree murder and conspiracy; and (2) that relator was denied due process of law because of ineffective trial counsel. On November 8, 1973, this Court adopted the Report and Recommendation of the United States Magistrate, Judge Naythons, holding that relator's claim of insufficiency of the evidence was frivolous but that an evidentiary hearing should be held with regard to relator's claim of ineffective trial counsel.

### 1. *Insufficiency of the Evidence*

As was pointed out in the Report and Recommendation, an examination of the

state court record reveals that relator and three other men, Thomas McKnight, Joseph McKnight and Kenneth McIntyre, at the insistence of relator, agreed to entice John G. Gentry to a wooded area in Concord Township, and there to beat him up for having physically abused relator's sister. As Gentry approached the agreed upon location, one of the four jumped him from behind and a struggle ensued; when Gentry tried to flee from the scene, the conspirators followed in pursuit and, after catching up with Gentry, McIntyre first hit him with his fists and relator then handed McIntyre the barrel of a rifle and told him to "finish" Gentry off so he could not inform the police. McIntyre then hit Gentry several times on the head with the rifle barrel, and while the victim laid prostrate on the ground, relator and his companions fled the scene. Gentry was subsequently found dead where the assault occurred. The cause of death was determined to be the result of complications from injuries of the head and skull caused by multiple blows with a blunt instrument. Joseph McKnight testified that relator organized the conspirators (of which he was one) to beat up Gentry because Gentry had physically abused relator's sister. Joseph McKnight testified further that relator helped lure Gentry to the scene of the crime, was at the scene of the crime, gave the murder weapon to McIntyre, another co-conspirator, and then fled in Gentry's car after the deed was done. Relator, in a statement given to the police, admitted being part of the conspiracy but claimed that he only went along to make sure Gentry was not hurt badly. Relator in his statement claimed that the motive for the beating was that Gentry owed Joseph McKnight some money and that when he heard Gentry yelling at the scene of the crime, he became nervous and ran away.

█ As we stated in the Report and Recommendation, "it is clear to us that relator's claim that there was no evidence of his participation as a co-conspirator is frivolous. The fact that relator did not personally inflict the blows does not, under the circumstances, exculpate him from guilt. Commonwealth v. Doris, 287 Pa. 547, 135 A. 313 (1926); Commonwealth v. Murrano, 276 Pa. 239, 120 A. 106 (1923)."

## 2. Ineffective Assistance of Counsel

In accordance with the Report and Recommendation, this Court held a hearing on November 18, 1973, to consider relator's claim of ineffective assistance of counsel.

█ Relator contends that he suffered from ineffective assistance of counsel in violation of his constitutional rights in that his trial counsel was inadequately prepared for trial. The controlling standards in evaluating ineffective assistance of counsel claims are set forth in Moore v. United States, 432 F.2d 730 (3d Cir. 1970). There is no question that adequate preparation and adequate performance are relevant considerations in connection with petitions for post-conviction relief.

Relator's claim that he had ineffective assistance of counsel due to inadequate preparation arises from the following facts: Immediately after his arrest, relator's family retained Richard C. Tinucci, Esq. to defend relator. Between relator's arrest and the start of his trial, a period of approximately four and one-half months, Mr. Tinucci had three or four conferences with relator, each lasting one-half hour to an hour. In addition, Mr. Tinucci had represented relator at his preliminary arraignment, preliminary hearing, court arraignment and a suppression hearing. During his visits with relator Mr. Tinucci explained to relator his efforts to obtain a plea bargain with the District Attorney in return for a guilty plea. Although relator indicated that he did not wish to plead guilty, Mr. Tinucci was of the impression that relator wanted him to continue his plea bargaining efforts.

The case came to trial before the Honorable Paul R. Sand, of the Court of Common Pleas of Delaware County, on Monday, March 24, 1969. Prior to selecting a jury, there was a meeting in chambers between Judge Sand, the As-

sistant District Attorney, relator and Mr. Tinucci. At this meeting, relator indicated that he was dissatisfied with Mr. Tinucci as his counsel. Relator stated that his dissatisfaction stemmed from Mr. Tinucci's suggestion that relator consider pleading guilty. Relator, however, took the position that he wanted to proceed with the trial because he was not guilty of murder. After some discussion, Judge Sand advised relator that a "guilty" plea had to be his voluntary decision and that the trial would proceed on the basis of his "not guilty" plea. Mr. Tinucci stated that he was willing and ready to proceed with the trial. Relator also stated that he was willing to have Mr. Tinucci remain as his counsel. Immediately thereafter, on March 24, 1969, a jury was selected and sworn, and the matter proceeded to trial. The Assistant District Attorney made his opening to the jury at approximately 4:10 P.M. Three witnesses were called, examined and cross-examined, and the Court recessed at 4:35 P.M.

On Tuesday morning, March 25, 1969, the second day of trial, there was another conference in Judge Sand's chambers attended by Judge Sand, the Assistant District Attorney, relator and Mr. Tinucci. Relator again expressed his dissatisfaction with Mr. Tinucci and for the first time requested that Mr. Tinucci be replaced as counsel. Relator expressed a lack of confidence in Mr. Tinucci. Relator stated that he wanted James Cochrane, Esq. to represent him. Judge Sand communicated with Mr. Cochrane concerning the possibility of Mr. Cochrane entering the case as co-counsel for relator. Mr. Cochrane came to Judge Sand's chambers and stated that a prior trial commitment prevented him from coming into the case as co-counsel. Judge Sand then refused relator's request for the removal of Mr. Tinucci and ruled that the trial should proceed with Mr. Tinucci as relator's counsel.

The trial continued at 10:50 A.M., on the second day. The Assistant District Attorney called his fourth witness to the stand. After the luncheon recess and before the testimony of the fourth witness was completed, relator stood up in open court and announced that he did not wish Mr. Tinucci to continue as his counsel. At this point, Judge Sand retired to his chambers accompanied by the Assistant District Attorney, relator and Mr. Tinucci. Mr. Tinucci then asked to withdraw as counsel, but his request was refused by Judge Sand and the testimony of the fourth witness resumed at 2:35 P.M. Later that afternoon, while the fifth Commonwealth witness was under direct examination, a recess was called and Judge Sand again retired to his chambers along with the Assistant District Attorney, relator and Mr. Tinucci, as well as the District Attorney, Stephen J. McEwen. Judge Sand then contacted Edward J. Zetusky, Esq. and requested him to come to his chambers to confer with him, relator and Mr. Tinucci. At about 5:30 P.M. relator indicated that he had spoken with Mr. Zetusky and was satisfied to accept Mr. Zetusky as co-counsel with Mr. Tinucci. Judge Sand then appointed Mr. Zetusky co-counsel with Mr. Tinucci, with the understanding that both were to remain in the case and represent relator. Mr. Zetusky consented to the appointment as co-counsel and relator agreed. Mr. Zetusky at this time requested a continuance. Judge Sand denied the request and stated that the trial would resume at 10:00 A.M. the next morning, March 26, 1969. Prior to continuing with the testimony of the Commonwealth's fifth witness on March 26, 1969, Judge Sand called a conference, attended by all the parties and the following ensued (N.T. 155–59):

THE COURT: Now, despite the fact that there was a very definite agreement and consent to what I did with respect to the appointment of Mr. Zetusky to represent the defendant with Mr. Tinucci, and at the expense of the county, I want to make sure that there has been no change on the part of anyone concerned.

First of all, I want to ask Mr. Zetusky whether he is satisfied this morning, as he was yesterday afternoon, to represent the defendant, together with Mr. Tinucci.

MR. ZETUSKY: After being appointed by your Honor, Mr. Tinucci and I returned to Chester whereupon we reviewed for many hours the case, including the alleged statements given by various people.

I went over the facts completely with Mr. Tinucci. I went into detail with Mr. Tinucci as far as the testimony given already by the Commonwealth witnesses, as far as certain exhibits admitted into evidence.

I feel at the present time I have been brought up to the present status of the case by Mr. Tinucci. I have asked Mr. Tinucci quite honestly as to whether he is aware of all the facts after his investigation, that if I need any additional facts that I may have missed, that he can supply them in a moment's notice. He has advised me he is completely aware of all the facts and can be of valuable assistance. I feel at the present time, after going over the case with Mr. Tinucci and after reviewing various statements, that I feel that I know most of the facts involved in this case, and with Mr. Tinucci assisting me, I think that we can proceed without any difficulty.

THE COURT: Of course, you realize that you are not supplanting Mr. Tinucci; that you are actually working together?

MR. ZETUSKY: Yes, sir.

THE COURT: And that you believe that you are sufficiently aware of the facts now to proceed together with Mr. Tinucci to represent Mr. Owens?

MR. ZETUSKY: Together with Mr. Tinucci, yes, your Honor.

THE COURT: Am I correct in assuming, at least I do assume from what you told me in the corridor a few moments ago, that you and Mr. Tinucci spent all of yesterday afternoon and evening until the wee hours of the morning going over all of those facts so that you will be aware not only of what has transpired but whatever may have to be done from here on to protect the defendant's interests?

MR. ZETUSKY: Yes, sir.

THE COURT: Mr. Tinucci, do you have any comment you care to make, or are you perfectly willing to proceed together with Mr. Zetusky?

MR. TINUCCI: Yes, your Honor, I am.

THE COURT: Do you concur with what he said that the two of you spent those many hours, as has been indicated to me, and that you have apprised Mr. Zetusky of all the facts, and that he knows as much as you do in fact about the situation?

MR. TINUCCI: Yes, he does. Immediately after Mr. Zetusky's appointment yesterday afternoon, we went to Chester to our office, which is in the same building, and we worked 'til the wee hours of the morning. I feel that he knows as much as I know about this case right now.

THE COURT: Now, addressing myself to you, Gerald Owens, you have heard not only what I said preliminarily, but also what Mr. Zetusky and what Mr. Tinucci said. Are you satisfied and content as you were yesterday?

THE DEFENDANT: Yes, I am.

THE COURT: Now, if you have any dissatisfaction with Mr. Zetusky, I want you to tell me right now. If you don't we are going to proceed on the assumption that you have confidence in him and you are confident he will do everything he possibly can under the circum-

stances to protect your interests in every possible way.

THE DEFENDANT: I am sure he will.

Mr. Zetusky proceeded to conduct the trial with the assistance of Mr. Tinucci as co-counsel. Trial lasted an additional three days, and Judge Sand several times during the remaining portion of the trial inquired of relator whether he was satisfied with the conduct of the defense to which relator always answered in the affirmative. On March 28, 1969 the jury returned its verdict, finding relator "guilty" of second degree murder and conspiracy.

Thereafter, defense counsel filed motions for new trial and in arrest of judgments, which motions raised the issues of insufficiency of the evidence and ineffective assistance of counsel. The motions were denied by the Court en banc. The judgment in connection with the murder conviction was then appealed to the Supreme Court of Pennsylvania, and the judgment in connection with the conspiracy conviction was appealed to the Superior Court of Pennsylvania, which appeal was later certified to the Supreme Court of Pennsylvania. The Supreme Court affirmed both convictions.

Relator asserts that under the "confused circumstances" surrounding the trial, it was impossible for either Mr. Tinucci or Mr. Zetusky to effectively protect his rights. Relator contends that Mr. Tinucci withdrew from active trial of the case, and Mr. Zetusky was never given an opportunity to adequately develop the case. Relator claims that counsel failed to protect his rights in several important aspects. These may be enumerated as follows: (1) counsel failed to request a Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), hearing to test the constitutionality of the statement which relator gave to police and failed to present this as a ground for a new trial after the verdict had been rendered; (2) counsel failed to raise on post-trial motions three allegations of error and thus was precluded

from raising them on appeal to the Supreme Court of Pennsylvania; (3) counsel failed to produce several witnesses who relator now claims would have tended to impeach the testimony of a co-conspirator with regard to motive.

As heretofore pointed out, the controlling standards in evaluating claims of ineffective assistance of counsel are set forth in Moore v. United States, *supra,* as follows:

> [T]he standard of adequacy of legal services as in other professions is the exercise of the customary skill and knowledge which normally prevails at the time and place.

> . . . . . .

> Adequate preparation for trial often may be a more important element in the effective assistance of counsel to which a defendant is entitled than the forensic skill exhibited in the courtroom.

> . . . . . .

> [R]epresentation involves more than the courtroom conduct of the advocate. The exercise of the utmost skill during the trial is not enough if counsel has neglected the necessary investigation and preparation of the case or failed to interview essential witnesses or to arrange for their attendance.

We agree with the observation of Judge Becker of this Court that: "The adequacy of preparation question must be addressed however in terms of the controlling standard of the adequacy of legal services, that of 'normal competency' as announced in *Moore,* i. e., 'the exercise of the customary skill and knowledge which normally prevails at the time and place.'" United States ex rel. Navarro v. Johnson, 365 F.Supp. 676 (E.D.Pa.1973).

The *Moore* case overruled United States ex rel. Mathis v. Rundle, 394 F.2d 748 (3d Cir. 1968), which held that a late appointment of counsel created the presumption that the defendant was prejudiced, shifting to the state the burden of showing to the contrary. In *Moore,* the Court abandoned this pre-

**1334**

sumption in favor of an inquiry into all the facts and circumstances surrounding counsel's appointment and placed the burden on the defendant to prove his counsel's inadequacy. The Court said that the failure to appoint counsel until the day of trial or very shortly prior thereto raised a "strong inference" of prejudice.

Relator contends that Mr. Tinucci's actual preparation of this case is not the controlling factor. Relator claims that since Mr. Tinucci asked to withdraw and since Judge Sand "clearly indicated that Mr. Zetusky was to conduct the trial of the case", the important factors are Mr. Zetusky's inability to prepare for trial and the lateness of his appointment.

■ In *Moore* the Court held that the timeliness of appointment of counsel when the Public Defender represented a defendant must be measured from the time the Public Defender was appointed by the court and not from the time the particular trial lawyer was assigned to the case. Here we have a situation where trial counsel was privately retained well in advance of trial. Mr. Tinucci had sufficient time to adequately assess the evidence, to investigate facts and to prepare a defense, all of which he appears to have done well. Mr. Tinucci was prepared and willing to proceed to trial. He was on good terms with relator up to the time of trial. He had discussed the case with the Assistant District Attorney who made available all of the state's evidence including statements by relator and Joseph McKnight, one of the alleged co-conspirators. After Mr. Zetusky's appointment, he and Mr. Tinucci met for five to six hours reviewing the evidence and preparing for the remainder of the trial. Although Mr. Zetusky had never tried a capital case, he, nevertheless, had considerable experience in the trial of criminal cases, having tried about twelve criminal cases per year during the preceding five years. Mr. Tinucci also had experience in the trial of criminal cases, having tried several criminal cases in the three-year period since his graduation from law

school. Moreover, as Mr. Zetusky noted in his closing to the jury (N.T. 524): "He [Mr. Tinucci] had talked to me about this case prior to the time the trial started, so it was not a situation where I was called into this case as a novice, not knowing the facts underlying this entire situation." It appears to have been the court's intention that both lawyers would try the case as co-counsel. Although Mr. Tinucci, after Mr. Zetusky's appointment, did not question witnesses or make objections, he, nevertheless, participated actively throughout the remainder of the trial by consulting with and advising Mr. Zetusky. Under the facts of this case, this Court determines that relator's claim of ineffective assistance of counsel due to inadequate preparation must be assessed by evaluating the preparation of both Mr. Tinucci and Mr. Zetusky, and we find that their preparation for the trial of this case falls well within the "normal competency" standard enunciated in *Moore*. Insofar as this case concerns adequacy of preparation, we followed the dictates of *Moore* by holding an evidentiary hearing and carefully examining the record as a whole in making our determination that relator has not met his burden of proving failure on the part of his counsel to meet the level of "normal competency" which our Third Circuit mandates.

Furthermore, an examination of the record in this case discloses no apparent omissions or deficiencies by defense counsel in the conduct of the trial. Relator's first contention is that counsel failed to request a Jackson v. Denno hearing and failed to present this as a ground for a new trial after the verdict had been rendered. Initially, we note that the record discloses that prior to trial relator filed a motion to quash his oral and signed statements which motion, after hearing, was denied, thereby obviating the necessity of further questioning the voluntariness of relator's statements at the time of trial. Moreover, relator did not deny the voluntariness or accuracy of his statements to his

counsel. In addition, under the circumstances of this case and the defense strategy as it evolved at trial, relator's statements were of great importance to the defense. The failure of counsel to raise the question of the voluntariness of the statements at the time of trial was certainly consistent with the defense strategy. The trial proceeded primarily by way of the state's attempting to establish the corpus delicti through various exhibits and witnesses; the introduction of relator's statements; the testimony of a co-conspirator, Joseph McKnight; and attempts to corroborate the story given by Joseph McKnight.

■■ Assistance of counsel is deemed effective so long as the course chosen by counsel has some reasonable basis designed to effectuate his client's interests. United States ex rel. Green v. Rundle, 305 F.Supp. 523 (E.D.Pa.1969); United States ex rel. Henderson v. Brierley, 300 F.Supp. 638 (E.D.Pa.1968); Commonwealth ex rel. Washington v. Maroney, 427 Pa. 599, 235 A.2d 349 (1967). An examination of the record and the testimony of Mr. Tinucci and Mr. Zetusky at the hearing before this Court indicates that the defense version of the facts was conveyed to the jury by way of relator's statements. Relator's statements showed that although he was present at the attack on the victim, he never participated in the attack; that he did not have any motive to assault the victim; that Joseph McKnight, a co-conspirator, had a motive to assault in that the victim owed McKnight some money; and that relator in fact attempted to disassociate himself from the conspiracy and fled the scene when the co-conspirators began to beat the victim. These statements were important to the defense strategy and trial tactics, and defense counsel viewed the statements as exculpatory. McKnight had given a pretrial statement accusing relator of luring the victim to the death scene and declaring that relator urged the assault in retaliation for the alleged physical abuse given by the victim to relator's sister. Mr. Tinucci was aware of Mc-

Knight's statement in advance of trial and had knowledge that McKnight would probably be a witness for the Commonwealth. The use of relator's statements was viewed by defense counsel as a good way to give relator's side of the story without having him take the stand to testify and thus expose his criminal record. Moreover, relator had indicated on several occasions that he did not want to testify because of his fear of the McKnight family. The defense considered relator's statements as a good way to explain his failure to testify, to vividly demonstrate his fear of the McKnights and to counteract the testimony of Joseph McKnight. Accordingly, there was a reasonable basis for this course of action which was designed in the best interest of the relator. Furthermore, as the trial progressed the issue evolved as to whether the jury would believe the relator's statements or McKnight's testimony. There was thus presented a clear credibility conflict, and in their attempt to persuade the jury as to the credibility of relator's statements, the efforts of defense counsel during cross-examination of Joseph McKnight and in closing argument were well within the range of customary skill and competence. Realizing that McKnight was a probable Commonwealth witness, the defense called to the stand a Mr. Joel Winter, in an effort to impeach McKnight's story. Mr. Winter testified concerning statements McKnight and Kenneth McIntyre, another co-conspirator, had told him in corroboration of relator's story. Defense counsel also attempted to impeach McKnight's testimony by pointing up the inconsistencies between a prior statement given by McKnight and his in-court testimony. The defense was also prepared to and did attack McKnight's credibility by introducing his criminal record and by emphasizing that McKnight's testimony was designed to protect his own brothers who allegedly participated in the incident and to earn favorable treatment for himself. We, therefore, find no substance to relator's claim of ineffective assistance of counsel in connection with

the defense counsels' handling of the oral and written statements of relator.

Relator also contends that the confused circumstances at the time of trial combined with lack of adequate time to prepare caused counsel to fail to raise three alleged errors in post-trial motions before the trial court, thereby barring relator from raising these alleged errors before the Supreme Court of Pennsylvania. Commonwealth v. Owens, *supra*. The three alleged errors which the Pennsylvania Supreme Court held could not be raised on appeal were: (a) that the trial court erred in its supplementary charge concerning the definition of voluntary manslaughter; (b) that the trial court erred in refusing relator's motion for a mistrial after testimony by a witness for the Commonwealth which indicated that relator committed another crime; and (c) that the trial judge erred in permitting a witness to testify for the Commonwealth who was not listed as a witness on the Bill of Indictment. Relator in his petition is not presenting these alleged errors for the purpose of having this Court rule upon them, but claims that he is using them solely as a vehicle upon which to ground his claim of ineffective assistance of counsel. In evaluating his claim that he had ineffective counsel because counsel failed to raise alleged errors on post-trial motions, we must of necessity review these errors to determine if relator was prejudiced by such alleged errors and counsels' failure to raise them in post-trial motions.

 In connection with these three alleged errors, we find that relator has failed to make a showing of considerable actual prejudice. United States of America ex rel. Davis v. Johnson, 495 F. 2d 335 (3d Cir. 1974). *See also,* United States ex rel. Johnson v. Johnson, 471 F.2d 264 (3d Cir. 1973); United States ex rel. Taylor v. Rundle, 456 F.2d 1245 (3d Cir. 1972); United States ex rel. Washington v. Maroney, 428 F.2d 10 (3d Cir. 1970). The failure to preserve for review alleged errors which might properly have been but were not raised in post-trial proceedings does not constitute considerable actual prejudice because the Pennsylvania Appellate Courts will review "basic and fundamental" trial errors which were not raised below. Commonwealth v. Williams, 432 Pa. 557, 248 A.2d 301 (1968) and cases cited therein. In this case, the Pennsylvania Supreme Court obviously considered such errors insubstantial since it refused to review them. Commonwealth v. Owens, *supra*.

 Addressing ourselves to the specific allegations of error claimed by relator, we find that relator was not prejudiced by the court's supplemental charge to the jury concerning the definition of voluntary manslaughter. In response to a question submitted by the jury, the trial judge proceeded to redefine murder in the first degree, murder in the second degree and voluntary manslaughter as follows (N.T. 735–36):

Remember what I told you with respect to malice. If there was malice, it is either first or second degree if you should find that from the evidence beyond a reasonable doubt. If there was no malice, it could be voluntary manslaughter if there was such a sudden rage or resentment or passion as I have described it to you without any time on the part of the slayer to cool off, and he did something during that moment such as—perhaps I shouldn't give you an illustration, but I will try—such as suddenly in a rage without any time to cool off striking one hard blow and knocking a person to the ground which caused the death, not intentionally, of course, because it wasn't intended in that case, but that might be and could be voluntary manslaughter because there was no malice. There was no intention to kill. If there was this malice, this intention to kill, or it was, as I have indicated before, a hardness of heart, cruelty or recklessness of consequences or a mind regardless of social duty, there would be malice and you would be in a position where you would have to decide, depending upon the evidence and depending upon whether the Com-

monwealth had proved beyond a reasonable doubt, the choice is then between first and second degree murder, and I have attempted to explain the distinction between those two.

The relator on appeal to the Pennsylvania Supreme Court claimed that the foregoing portion of the charge gave an inaccurate illustration of voluntary manslaughter in that it indicated to the jury that if one blow was made and a death ensued without the reckless intent, the relator would be guilty of voluntary manslaughter. Relator argues that since the jury already knew that there had been seven to ten blows struck, when the Judge stated "striking one hard blow and knocking a person to the ground which caused the death" would be voluntary manslaughter, this inferred that where more than one blow was struck, the jury could not find relator guilty of voluntary manslaughter. Such a charge was not prejudicial to the relator. The trial judge made it perfectly clear throughout his charge that the essential ingredient of murder is malice and that manslaughter is the unlawful killing of another without malice. The Judge correctly instructed that malice was the distinguishing factor between murder and manslaughter and defined malice for the jury. The jury returned a verdict of second degree murder. We see no basis for concluding that the relator was prejudiced by the Judge's supplemental instructions. As a matter of fact, the Supreme Court of Pennsylvania used almost identical language in defining voluntary manslaughter when in Commonwealth v. Walters, 431 Pa. 74, 244 A.2d 757 (1968), it stated:

> *To reduce an intentional blow, stroke or wounding, resulting in death to voluntary manslaughter,* there must be sufficient cause of provocation and a state of rage or passion, without time to cool, placing the prisoner beyond the control of his reason, and suddenly impelling him to the deed. (Emphasis added).

██ ██ The relator also claims that defense counsel should have raised the issue in post-trial motions that the trial judge erred in refusing relator's motion for a mistrial after a witness for the prosecution allegedly indicated in his testimony that the relator was guilty of the commission of other crimes. One of the investigating officers in this case was Joseph A. Price, a member of the Pennsylvania State Police. Officer Price was called by the Commonwealth to testify concerning his investigation of the incident in question, and he testified as follows (N.T. 362):

> Later that date he was. We had originally made contact with Gerald Owens [relator] on other matters and after the termination of the statement and completion of the statement, and this other matter was handled. he was taken before the magistrate He was then transported to Delaware County Prison.

Relator contends that this testimony indicated that he had originally been taken into custody because of "other matters." It is well established law in Pennsylvania and the Third Circuit that in a criminal prosecution proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times is incompetent and inadmissible. Commonwealth v. Peterman, 430 Pa. 627, 244 A.2d 723 (1968); Commonwealth v. Trapp, 217 Pa.Super. 384, 272 A.2d 512 (1970); United States v. Hines, 470 F.2d 225 (1972). However, such improper remarks were not harmful particularly in view of the trial judge's cautionary instruction that the jury should disregard the reference to "other matters." The trial judge, after defense counsel's objections to Officer Price's remark, immediately instructed the jury as follows (N.T. 364):

> Members of the jury, this witness, Trooper Price, in his testimony made reference, albeit briefly, to 'another offense.' I am saying to you here and now, and most emphatically, that I don't know what that offense was, whether it was an offense or whatever it was, you have nothing to do with

that. It has nothing to do with this case. You are not to consider it in any manner whatsoever. It is something, as far as you are concerned, as if nothing has been said. It has no importance in this case whatever.

We find no abuse of discretion by Judge Sand. The admonition to the jury by the trial judge was sufficient to expunge any possible prejudice to the relator which may have arisen from the reference to "other matters." United States v. Belperio, 452 F.2d 389 (9th Cir. 1971); United States v. DeLarosa, 450 F.2d 1057 (3d Cir. 1971); Frame v. United States, 444 F.2d 71 (9th Cir. 1971); Russell v. United States, 429 F.2d 237 (5th Cir. 1970); United States v. Christian, 427 F.2d 1299 (8th Cir. 1970); Commonwealth v. Brown, 444 Pa. 318, 282 A.2d 364 (1971); Commonwealth v. Savor, 180 Pa.Super. 469, 119 A.2d 849 (1956). But see, United States v. Smith, 403 F.2d 74 (6th Cir. 1968); Commonwealth v. Blose, 160 Pa.Super. 165, 50 A.2d 742 (1947).

█ Finally, relator claims that counsel should have raised on post-trial motions the trial judge's ruling permitting Joseph McKnight to testify as a witness for the Commonwealth. After Mr. Zetusky entered the case as co-counsel with Mr. Tinucci, the Commonwealth called co-conspirator Joseph McKnight as a witness. McKnight had not been listed as a witness on the Bill of Indictment, and the Assistant District Attorney did not move to have McKnight added to Bill of Indictment. Defense counsel objected to McKnight being called as a witness but was overruled (N.T. 258). Rule 216 of the Commonwealth of Pennsylvania Rules of Criminal Procedure, 19 P.S. Appendix, provides as follows:

The names of all witnesses examined before the grand jury shall be endorsed on the indictment but the failure to do so shall not affect the validity of sufficiency thereof. Names of witnesses called before the grand jury but not endorsed on the indictment may be added thereto by permission

of the court on application. In such case the Court shall grant such continuance as may be necessary in the interests of justice.

Relator contends that no witness can be called by the Commonwealth unless that witness is listed on the Bill of Indictment. Relator concludes that this omission by the Commonwealth was prejudicial error. Rule 216 mentions only witnesses who have appeared before the grand jury. There is no evidence that Joseph McKnight appeared before the grand jury. However, whether Rule 216 limits the Commonwealth to witnesses appearing on the Bill of Indictment, will not be decided by this Court. Relator's counsel were well aware that McKnight had given a statement to the Commonwealth implicating the relator and were aware that McKnight might be called to testify at trial, and as we have heretofore pointed out defense counsel were prepared to attack McKnight's testimony. Under these circumstances we see no prejudice to relator when the Commonwealth presented McKnight as a witness and the court permitted him to testify.

█ It is our opinion, and we so find, that the failure of relator's counsel to raise these three alleged errors in post-trial motions does not support an accusation of ineffective counsel where as here relator has failed to demonstrate that he suffered considerable actual prejudice therefrom.

█ Relator's final claim of ineffective assistance is that due to lack of adequate preparation counsel failed to produce several witnesses "named" by the relator who allegedly would have tended to impeach the testimony of Joseph McKnight with regard to motive. Although relator has raised this contention, it has no merit. Relator has not attempted in any way to disclose either the identity or the testimony of such witnesses. Such conclusory, unsubstantiated assertions cannot serve as a basis for a claim of ineffective assistance of counsel. Gravenmier v. United States, 399 F.2d 677 (9th Cir. 1968).

■ Relator relies upon Commonwealth v. Velasquez, 437 Pa. 262, 263 A.2d 351 (1970) where the Court permitted the defendant to withdraw his plea of guilty in a case where privately retained counsel requested leave to withdraw and a continuance to allow the defendant to obtain new counsel. In *Velasquez,* however, counsel wanted the defendant to plead guilty and requested that he be permitted to withdraw when the defendant insisted on going to trial. The Supreme Court of Pennsylvania held that the trial court's failure to grant a continuance and leave to withdraw deprived the defendant of any meaningful and voluntary choice at the time defendant entered his guilty plea. *Velasquez* was not an ineffective assistance of counsel case. In *Velasquez* defense counsel wanted the defendant to plead guilty and did not want to try the case. The defendant had the choice of accepting counsel's urging to plead guilty, or proceeding to trial with counsel who did not want to try the case. Here, Mr. Tinucci merely discussed the possibility of a guilty plea with relator but was in fact ready and willing to proceed to trial. Relator was in no way faced with the choice of accepting Mr. Tinucci's suggestion or proceeding to trial with a counsel who did not want to try his case. Relator not only had counsel who was prepared and willing to proceed with trial, but his counsel had fulfilled his professional responsibility by discussing with relator the possibility of a guilty plea, leaving the decision in the hands of the relator. Furthermore, in this case relator agreed to go on with the trial after the court appointed a co-counsel. Under the circumstances, we find no abuse of the trial court's discretion in denying relator's request to have his counsel discharged or in failing to grant a continuance. United States v. Sanchez, 483 F.2d 1052 (2nd Cir. 1973); United States v. Morrissey, 461 F.2d 666 (2d Cir. 1972); United States v. Scott, 460 F.2d 45 (3d Cir. 1972); United States v. Grow, 394 F.2d 182 (4th Cir. 1968); United States ex rel. Davis v. McMann, 386 F.2d 611 (2d Cir. 1967); United States ex rel. Maldonado v. Denno, 348 F.2d 12 (2d Cir. 1965); *cf.* United States ex rel. Carey v. Rundle, 409 F.2d 1210 (3d Cir. 1969).

Under the facts of this case we find that relator has not borne his burden of proving ineffective assistance of counsel due to inadequate preparation or inadequate trial performance; and we must conclude that relator was not deprived of effective assistance of counsel.

This Opinion is in lieu of findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

Accordingly, the following Order is entered:

## ORDER

And now, to wit, this 27th day of August 1974, it is hereby ordered that the petition of Gerald Owens for a writ of habeas corpus is denied. There is no probable cause for appeal.